THE STATE OF OHIO, APPELLANT, v. MCDONALD ET AL., APPELLEES.

[Cite as State v. McDonald (1987), 31 Ohio St. 3d 47.]

(No. 86-1376—Decided June 20, 1987.)

*Stephen M. Stern,* prosecuting attorney, for appellant.

*Corabi & Corabi* and *Joseph M. Corabi,* for appellees McDonald and DiAlbert.

*Freifield, Bruzzese, Wehr & Moreland* and *Frank J. Bruzzese,* for appellee Hribar.

*Stern, Stern & Stern* and *James A. Stern,* for appellees Kolakis and Connor.

*R. Larry Schneider,* prosecuting attorney, and *John C. Heinkel,* urging reversal for *amicus curiae,* Ohio Prosecuting Attorneys Assn.

MOYER, C.J. The issue presented by this case is whether R.C. 2923.24 is constitutional on its face. The appellees' motions were filed prior to trial and there were no facts revealing the specific circumstances of the several counts in the indictments before the trial court at the time of its decision. Because the trial court expressly found the statute unconstitutional on its face, this opinion will address only that finding.

R.C. 2923.24 provides:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

"(1) Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating such dangerous ordnance, materials, or parts are intended for legitimate use;

"(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use.

"(C) Whoever violates this section is guilty of possessing criminal tools, a felony of the fourth degree."

Initially, we note the fundamental rule that legislative enactments are entitled to a strong presumption of constitutionality. *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 161-162, 38 O.O. 2d 404, 405, 224 N.E. 2d 906, 908-909. This rule requires that any reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of the General Assembly's power to enact the law.

The trial court found R.C. 2923.24 to be both vague and impermissibly overbroad. Criminal statutes are void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution if they fail to contain ascertainable standards of guilt. *Winters* v. *New York* (1948), 333 U.S. 507, 515. To withstand a claim of vagueness, the statute must fairly warn persons of ordinary intelligence as to what constitutes the prohibited conduct. For the following reasons, we find that R.C. 2923.24 is not void for vagueness.

The conduct sought to be prohibited by this statute does not lend itself to concise, specific wording. The General Assembly cannot reasonably be required or expected to list every article or device and how it could be used in a criminal manner. Furthermore, as this court stated in *Cincinnati* v. *Hoffman* (1972), 31 Ohio St. 2d 163, 166, 60 O.O. 2d 117, 119, 285 N.E. 2d 714, 717, "* * * [t]he injection of scienter provides a precise and comprehensive standard which is well within the ability of a person of common intelligence to understand. * * *" See, also, *Screws* v. *United States* (1945), 325 U.S. 91, 102.

Both the trial court and the appellate court failed to address the scienter element of R.C. 2923.24. The statute provides in division (A): "No person shall possess * * * any substance * * * with *purpose* to use it criminally." (Emphasis added.) "Purposely" is defined in R.C. 2901.22(A) as follows:

"(A)   A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

As the dissenting judge in the court of appeals below emphasized, "purpose" is the highest of the culpable mental states, placing on the prosecution the heaviest possible burden in establishing *mens rea*. By including this scienter requirement, the General Assembly has required both control of the article and the specific intention to use the article to commit a crime. These elements provide sufficient notice to persons of ordinary intelligence of the prohibited conduct. Accordingly, we find that R.C. 2923.24 does not fail on its face due to vagueness.

The trial court also found that this statute was unconstitutional because it was impermissibly overbroad, thereby prohibiting constitutionally protected conduct. We find no merit in this claim. Under this statute, the mere possession of an article or device is not the prohibited conduct. *State* v. *Anderson* (1981), 1 Ohio App. 3d 62, 1 OBR 342, 439 N.E. 2d 450. It is the possession coupled with the intent to use the device to commit a crime which is the prohibited conduct. Constitutionally protected conduct does not include the intention to commit a crime.

Additionally, the trial court based its decision on the fact that the statute granted too much discretion to prosecutors in proceeding with a felony prosecution since violation of R.C. 2923.24 is a fourth degree felony. The court observed that the possession of any substance, device, instrument, or article of any kind or nature, if used in the commission of a crime, regardless of how minor, would subject the wrongdoer to potential prosecution for the commission of a felony. The trial court cited the example of a person, committing a traffic violation, being charged with a felony for possessing the car used in the offense.

The error in this reasoning is that, although a statute may be un-

constitutional as applied to one set of facts, if the general class of offenses to which the statute is directed is plainly within its terms, the court has a duty to find the statute constitutional. *United States* v. *Petrillo* (1947), 332 U.S. 1, 7; *Cincinnati* v. *Hoffman, supra,* at paragraph three of the syllabus; *State, ex rel. Herbert,* v. *Ferguson* (1944), 142 Ohio St. 496, 27 O.O. 415, 52 N.E. 2d 980, paragraph one of the syllabus. This rule is particularly applicable where the constitutionality of the statute is being determined on its face rather than as applied to a certain set of facts.

R.C. 2923.24 does encompass a general class of offenses which are well within the General Assembly's power to prohibit. The Committee Comment to R.C. 2923.24 is instructive. It explains that this statute is an expansion of the former statute prohibiting the possession of burglar's tools. Additionally, R.C. 2923.24(B) lists situations establishing prima facie violations involving items having a high liability for criminal use. The General Assembly may constitutionally prohibit the possession of dangerous ordnance absent evidence of a legitimate purpose as provided in R.C. 2923.24(B)(1).

Although there are hypothetical circumstances one can propose where the potential applicability of R.C. 2923.24 may be unconstitutional, those circumstances are not before the court in this case. We simply are not inclined to engage in the exercise of imagining highly speculative and hypothetical circumstances invalidating a legislative enactment prohibiting conduct which the General Assembly clearly has the power to prohibit.

Finally, appellees' contention that the statute grants too much discretion to a prosecutor in charging a crime is not supported by any case law. The general rule is that prosecutorial discretion as to what offense is charged when two statutes proscribe the same conduct is not unconstitutional unless exercised to discriminate against a particular class of defendants. *State* v. *Wilson* (1979), 58 Ohio St. 2d 52, 55, 12 O.O. 3d 51, 53, 388 N.E. 2d 745, 748, at fn. 2.[1] We have no evidence of such discrimination in this case.

For the foregoing reasons, we hold that R.C. 2923.24 is constitutional. The judgment of the court of appeals is reversed, and this cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

---

[1] We observe that there are statutes prohibiting possession of specific articles, such as R.C. 2915.02(A)(5) (gambling devices) and R.C. 2925.12 (drug abuse instruments). The General Assembly has manifested a specific intent to classify possession of those articles as misdemeanors. These specific provisions would control over the general provision in R.C. 2923.24. R.C. 1.51.

SWEENEY and H. BROWN, JJ., dissent.

DOUGLAS, J., concurring. I concur in the well-reasoned decision of the Chief Justice and do so specifically on the basis that the trial court and the court of appeals, in a two-to-one decision, neglected to deal with that part of R.C. 2923.24(A) involving the necessary element of intent or purpose. No analysis of R.C. 2923.24 could be complete or dispositive, particularly where the constitutionality of the act is in question, without a review, discussion and application of this most important element.

I write also to make note of my agreement with the discussion of the issue now before us found in *State* v. *Anderson* (Apr. 6, 1982), Franklin App. No. 81AP-799, unreported, and the recent well-reasoned opinion of Judge Ford in *State* v. *Oliver* (1987), 31 Ohio App. 3d 100, 31 OBR 171, 508 N.E. 2d 1048.

HERBERT R. BROWN, J., dissenting. I must respectfully dissent. I agree with the majority that R.C. 2923.24[2] is not vague, at least within the constitutional meaning of that term. In my view the statute nevertheless cannot be applied to these defendants because such application would violate the constitutional prohibition against the infliction of cruel and unusual punishment.

The majority, inaccurately, grounds its decision upon a claim that "there were no facts revealing the specific circumstances of the several counts." From this, the leap is made to the following conclusion:

"Although there are hypothetical circumstances one can propose where the potential applicability of R.C. 2923.24 may be unconstitutional, those circumstances are not before the court in this case. We simply are not inclined to engage in the exercise of imagining highly speculative and hypothetical circumstances invalidating a legislative enactment prohibiting conduct which the General Assembly clearly has the power to prohibit."

The majority has not earned the right to this assertion. We need assume no hypothetical circumstances in order to find R.C. 2923.24 unconstitutional as applied to these defendants. The defendants are charged with possession of a substance with the intent to use it criminally under R.C. 2923.24. The substance in the case before us, as specified in the bill of particulars, is a "Dwarf's Den Machine" and the criminal purpose is gambling, a violation of R.C. 2915.02. Violation of R.C. 2923.24 is a felony carrying *a minimum prison sentence of six months* and a potential max-

---

[2] R.C. 2923.24 provides, in part:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"* * *

"(C) Whoever violates this section is guilty of possessing criminal tools, a felony of the fourth degree."

imum prison sentence of five years. If the defendants actually commit the crime of gambling they are guilty of a misdemeanor of the first degree which *requires no prison sentence* and has a maximum sentence of six months.[3] Thus, on its face and on the facts of this case, we are presented with the bizarre situation where one who possesses a substance with an intent to use it criminally may be punished far more harshly than one who actually commits the crime.

Whether R.C. 2923.24 is overbroad presents a close question. It does not sweep innocent conduct into its reach but it does make felonies out of misdemeanors. An argument for overbreadth can be made,[4] but the more specific constitutional flaw is the violation of the prohibition against cruel and unusual punishment. I would hold that R.C. 2923.24 cannot constitutionally be applied to a person who does not intend to use a "substance" to commit a *felony,* despite the all-encompassing nature of the phrase "with purpose to use it *criminally*" (emphasis added).

## I

The Eighth Amendment to the Constitution of the United States proclaims: "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" (Emphasis added.) Section 9, Article I of the Ohio Constitution contains identical language, and the protection provided under the two clauses is essentially the same. See, *e.g., State* v. *Chaffin* (1972), 30 Ohio St. 2d 13, 59 O.O. 2d 51, 282 N.E. 2d 46; *McDougle* v. *Maxwell* (1964), 1 Ohio St. 2d 68, 30 O.O. 2d 38, 203 N.E. 2d 334.

Deeply ingrained within the prohibition against cruel and unusual punishment is the concept that the penalty for an offense must be proportionally related to its severity. Thus, the Eighth Amendment and its Ohio counterpart prohibit "* * * not only barbaric punishments, but also

---

[3] See R.C. 2929.11 and 2929.21. .

[4] See *State* v. *Young* (1980), 62 Ohio St. 2d 370, 16 O.O. 3d 416, 406 N.E. 2d 499, certiorari denied (1980), 449 U.S. 905, in which we held that Ohio's organized crime statute, R.C. 2923.04, was unconstitutionally vague. In addition to vagueness, R.C. 2923.24 contained the same kind of overinclusion as R.C. 2923.24. We explained:

"The lower courts have properly pointed out that the criteria chosen by the General Assembly to mark the boundaries of the statute are extremely broad and bring many activities within the statute that would not normally be considered to be conduct engaged in by organized crime. Five persons who participate in a betting pool each time they attend a football game would fall within this definition of a criminal syndicate because their conduct constitutes a violation of R.C. 2915.04, governing public gaming. These persons, however, without clear notice from R.C. 2923.04, have no way of knowing that they are committing a felony of the first degree and are thus subject to a possible jail sentence of 25 years and a $10,000 fine. *The nature of their conduct itself does not indicate to them the penalties that are possible. R.C. 2923.04 makes no distinctions in its sentencing provisions but requires the same sanctions regardless of the nature and gravity of the underlying offense. * * *"* (Emphasis added.) *Id.* at 378, 16 O.O. 3d at 421, 406 N.E. 2d at 504-505.

sentences that are disproportionate to the crime committed." *Solem* v. *Helm* (1983), 463 U.S. 277, 284.

## II

The equitable notion that crimes and their respective punishments should be proportionally related predates the adoption of either the United States or the Ohio Constitution. The United States Supreme Court has recently presented a thorough restatement of the storied history of this concept:

"The principle that a punishment should be proportionate to the crime is deeply rooted and frequently repeated in common-law jurisprudence. In 1215 three chapters of Magna Carta were devoted to the rule that 'amercements' [fines] may not be excessive. And the principle was repeated and extended in the First Statute of Westminster, 3 Edw. I, ch. 6 (1275). These were not hollow guarantees, for the royal courts relied on them to invalidate disproportionate punishments. See, *e.g.*, *Le Gras* v. *Bailiff of Bishop of Winchester*, Y. B. Mich. 10 Edw. II, pl. 4 (C.P. 1316), reprinted in 52 Selden Society 3 (1934). When prison sentences became the normal criminal sanctions, the common law recognized that these, too, must be proportional. See, *e.g.*, *Hodges* v. *Humkin*, 2 Bulst. 139, 140, 80 Eng. Rep. 1015, 1016 (K.B. 1615) (Croke, J.) ('imprisonment ought always to be according to the quality of the offence').

"The English Bill of Rights repeated the principle of proportionality in language that was later adopted in the Eighth Amendment: 'excessive Baile ought not to be required nor excessive Fines imposed nor cruell and unusuall Punishments inflicted.' 1 Wm. & Mary, sess. 2, ch. 2 (1689). Although the precise scope of this provision is uncertain, it at least incorporated 'the longstanding principle of English law that the punishment . . . should not be, by reason of its excessive length or severity, greatly disproportionate to the offense charged.' R. Perry, Sources of Our Liberties 236 (1959); see 4 W. Blackstone, Commentaries *16-*19 (1769) (hereinafter Blackstone); see also *id.*, at *16-*17 (in condemning 'punishments of unreasonable severity,' uses 'cruel' to mean severe or excessive.) * * *

"When the Framers of the Eighth Amendment adopted the language of the English Bill of Rights, they also adopted the English principle of proportionality. Indeed, one of the consistent themes of the era was that Americans had all the rights of English subjects. See, *e.g.*, 1 J. Continental Cong. 83 (W. Ford ed. 1904) (Address to the People of Great Britain, Sept. 5, 1774) ('we claim all the benefits secured to the subject by the English constitution'); 1 American Archives 700 (4th series 1837) (Georgia Resolutions, Aug. 10, 1774) ('his Majesty's subjects in *America* * * * are entitled to the same rights, privileges, and immunities with their fellow-subjects in *Great Britain*'). Thus our Bill of Rights was designed in part to ensure that these rights were preserved. Although the Framers may have in-

tended the Eighth Amendment to go beyond the scope of its English counterpart, their use of the language of the English Bill of Rights is convincing proof that they intended to provide at least the same protection—including the right to be free from excessive punishments." *Solem* v. *Helm, supra,* at 284-286 (footnotes omitted).

### III

In the landmark case of *Weems* v. *United States* (1910), 217 U.S. 349, the court emphasized the constitutional mandate of proportionality, explaining that "it is a precept of justice that punishment for crime should be graduated and proportioned to offense." *Id.* at 367. The court reversed the imposition of a sentence of fifteen years of "*cadena temporal,*" a form of imprisonment that included hard labor in chains, upon a person convicted of falsifying a public document. Moreover, the court declared the Philippine statute authorizing such excessive punishment invalid on its face, inasmuch as the *minimum* penalty which could have been imposed was twelve years of *cadena temporal.* As the court held:

"* * * [E]ven if the minimum penalty of *cadena temporal* had been imposed, it would have been repugnant to the bill of rights. In other words, the fault is in the law, and, as we are pointed to no other under which a sentence can be imposed, the judgment must be reversed, with directions to dismiss the proceedings." *Id.* at 382.

The *Weems* court did not rely solely upon the inhumane nature of *cadena temporal.* Rather, it condemned the statute for its excessive *length* of punishment as well as its type. The court said, "[i]ts punishments come under the condemnation of the bill of rights, *both on account of their degree and kind.*" (Emphasis added.) *Id.* at 377.

In *Solem* v. *Helm, supra,* the court reaffirmed the principle of proportionality as a constitutional requirement. In *Solem,* the court said: "In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 290.

This court, also, has recognized the constitutional requirement of proportionality. In *State* v. *Chaffin, supra,* paragraph three of the syllabus, we held: "A punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community."[5]

### IV

In *Weems, supra,* the court acknowledged that it could not substitute its judgment for that of the legislature, but was limited to a determination

---

[5] *Chaffin* predates *Solem* by some eleven years. Therefore, as *Solem* makes no mention of the *Chaffin* requirement that the sense of justice of the community be shocked, the status of such requirement is unclear. Nonetheless, it is clear that the legislature retains wide discretion as to the penalty to be accorded to an offense. See *Solem, supra,* at 290, fn. 16.

of whether the statute at issue violated the Constitution. The court explained:

"* * * [P]rominence is given to the power of the legislature to define crimes and their punishment. We concede the power in most of its exercises. We disclaim the right to assert a judgment against that of the legislature of the expediency of the laws or the right to oppose the judicial power to the legislative power to define crimes and fix their punishment, *unless that power encounters in its exercise a constitutional prohibition. In such case not our discretion but our legal duty, strictly defined and imperative in its direction, is invoked.* Then the legislative power is brought to the judgment of a power superior to it for the instant." (Emphasis added.) *Id.* at 378-379.

The court then examined the penalties for other crimes to determine whether the statute at issue inflicted punishment in a manner disproportionate to the severity of the offense. *Inter alia,* the court noted that the maximum penalty under Philippine law for forgery of or counterfeiting government obligations or securities was fifteen years' imprisonment and a fine. The court found the lack of proportion between that penalty and the statutorily mandated penalty at issue to be not only deplorable, but unconstitutional:

"* * * In other words, the highest punishment possible for a crime which may cause the loss of many thousand of dollars, and to prevent which the duty of the State should be as eager as to prevent the perversion of truth in a public document, is not greater than that which may be imposed for falsifying a single item of a public account. *And this contrast shows more than different exercises of legislative judgment. It is greater than that. It condemns the sentence in this case as cruel and unusual. It exhibits a difference between unrestrained power and that which is exercised under the spirit of constitutional limitations formed to establish justice.*" (Emphasis added.) *Id.* at 381.

In *Solem, supra,* the court made explicit what was implicit in *Weems,* by setting forth three factors to be considered in performing an Eighth Amendment proportionality analysis:

"* * * [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292.

The court, reemphasizing a key point from *Weems,* explained the second factor in greater detail: *"If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive."* (Emphasis added.) *Id.* at 291.

As it had in *Weems,* the *Solem* court recognized that the Eighth Amendment's proportionality analysis requires a court to, in some sense, second-guess a legislature's grading of a particular crime and its respec-

tive punishment. The court set forth guidelines for the future application of its three factors:

"There are other accepted principles that courts may apply in measuring the harm caused or threatened to the victim or society. The absolute magnitude of the crime may be relevant. * * * *Few would dispute that a lesser included offense should not be punished more severely than the greater offense. * * * It also is generally recognized that attempts are less serious than completed crimes.* * * *" (Emphasis added.) *Id.* at 292-293 (citations omitted).

The court, in *Solem, supra,* at 293, calls attention to *Roberts* v. *Collins* (C.A. 4, 1976), 544 F. 2d 168, 170, certiorari denied (1977), 430 U.S. 973 (the punishment for simple assault may not constitutionally be greater than that for assault with intent to murder); *Dembowski* v. *State* (1968), 251 Ind. 250, 252, 240 N.E. 2d 815, 817 (the legislature may not constitutionally provide a punishment for robbery which is greater than that for armed robbery); and *Cannon* v. *Gladden* (1955), 203 Ore. 629, 632, 281 P. 2d 233, 235 (assault with intent to commit rape cannot be punished more severely than rape itself). The *Cannon* court, using language similar to the "shock the sense of justice of the community" requirement in *Chaffin, supra,* denounced the sentence imposed in that case:

"How can it be said that life imprisonment for an assault with intent to commit rape is proportionate to the offense when the greater crime of rape authorizes a sentence of not more than 20 years? It is unthinkable, and shocking to the moral sense of all reasonable men as to what is right and proper, that in this enlightened age jurisprudence would countenance a situation where an offender, either on a plea or verdict of guilty to the charge of rape, could be sentenced to the penitentiary for a period of not more than 20 years, whereas if he were found guilty of the lesser offense of assault with intent to commit rape he could spend the rest of his days in the bastile." *Id.* at 632-633, 281 P. 2d at 235.

## V

The *Solem* court relied upon Sir William Blackstone to set forth the proposition that, except for *conspiracy,* an inchoate crime should not be punished as severely as the completed offense:

"* * * [T]he greater and more exalted the object of an injury is, the more care should be taken to prevent that injury, and of course under this aggravation the punishment should be more severe. * * * *And yet, generally, a design to transgress is not so flagrant an enormity, as the actual completion of that design.* For evil, the nearer we approach it, is the more disagreeable and shocking: so that it requires more obstinacy in wickedness to perpetrate an unlawful action, than barely to entertain the thought of it: and it is an encouragement to repentance and remorse, even till the last stage of any crime, that it never is too late to retract; and that if a man stops even here, it is better for him than if he proceeds: *for which reason an attempt to rob, to ravish, or to kill* * * * *is far less penal than the*

*actual robbery, rape, or murder.*" (Emphasis added.) 4 Blackstone, Commentaries on the Laws of England (1857), at 15.

This principle was the decisive factor in *State* v. *Blackmon* (1963), 260 N.C. 352, 132 S.E. 2d 880. In *Blackmon,* the Supreme Court of North Carolina held that a sentence of from twenty to thirty years' imprisonment, imposed upon a defendant convicted of possession of burglar's tools or implements of housebreaking, constituted cruel and unusual punishment under the North Carolina Constitution in light of the maximum sentence of ten years' imprisonment which could be imposed for the crime of housebreaking itself. The court could not sanction what it described as "the anomalous situation of upholding the imposition of a sentence in the State's Prison three times as long as could be legally imposed for the actual commission of the crime of housebreaking * * *." *Id.* at 357, 132 S.E. 2d at 884.

## VI

Having examined the relevant constitutional precedent, the task is to apply these teachings to the case *sub judice.* In so doing, it is apparent that R.C. 2923.24, as applied to these appellees or to anyone who intends to use a "substance" to commit a misdemeanor, violates the constitutional prohibitions against the infliction of cruel and unusual punishment.

## A

Ohio's criminal tools statute, R.C. 2923.24, although infinitely broader than a simple burglar's tools statute,[6] expressly retains its inherent inchoate character,[7] as it prohibits possession of "any substance, device, instrument, or article, *with purpose to use it criminally.*" (Emphasis added.)

The gravamen of R.C. 2923.24 falls short, not only of the crime intended, but even of an attempt of that crime. For example, possession of a burglar's tool with intent to use it to commit a burglary is not sufficient to

---

[6] As the majority observes, the Committee Comment to R.C. 2923.24 provides, in part: "This section expands upon a former measure prohibiting the possession of burglar's tools, *to include possession of all things intended for criminal use.*" (Emphasis added.) Former R.C. 2907.11, the predecessor to R.C. 2923.24, provided:

"No person shall have or keep in his possession tools, implements, or other things used by burglars for house breaking, forcing doors, windows, locks, or buildings, or other places where goods, wares, merchandise, or money are kept, with the intention of using such tools or implements burglariously.

"Whoever violates this section shall be imprisoned not less than one nor more than five years."

See, also, *State* v. *Talley* (1985), 18 Ohio St. 3d 152, 156, 18 OBR 210, 213, 480 N.E. 2d 439, 442.

[7] All statutes prohibiting possession of burglar's tools define a crime that is inchoate to the offense of burglary. See Annotation, Validity, Construction, and Application of Statutes Relating to Burglars' Tools (1970), 33 A.L.R. 3d 798, 804-805.

prove attempted burglary. Thus the inchoate character of R.C. 2923.24 runs deeper than that of the criminal attempt statute, R.C. 2923.02.[8]

Under the constitutional mandate of proportionality, one would expect the penalties for a violation of R.C. 2923.24 to be less severe, or at least no more severe, than those for the successful completion of the intended crime.[9] Nevertheless, R.C. 2923.24(C) blindly declares that a violation of that statute is a felony of the fourth degree, regardless of the severity of the underlying offense. Where the intended crime is a *felony*, R.C. 2923.24 does not result in a disproportionate penalty. However, as in the case *sub judice*, where the intended crime is punishable as a *misdemeanor*, R.C. 2923.24 results in the paradoxical situation of an inchoate crime being punished more severely than the successfully completed offense.[10] Such an anomaly violates the proportionality requirement of the Ohio and United States Constitutions. *Solem, supra.*

## B

Moreover, R.C. 2923.24 suffers from a separate proportionality problem. All the appellees herein were indicted for alleged violations of both R.C. 2923.24 and 2915.02(A)(5), which is part of the statutory prohibition against gambling. R.C. 2915.02(A) provides:

"No person shall:

"(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;

"(2) Establish, promote, or operate, or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;

"(3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of, information for use in establishing odds or determining winners in connection with bookmaking or with any scheme or game of chance conducted for profit;

"(4) Engage in betting or in playing any scheme or game of chance, except a charitable bingo game, as a substantial source of income or livelihood;

"(5) *With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.*" (Emphasis added.)

---

[8] The substantial step required to establish an attempted offense is not satisfied by the mere, passive possession of a substance. Cf. *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, paragraph one of the syllabus.

[9] For instance, under Ohio law criminal attempt is punished less severely than the completed offense. See R.C. 2923.02(E).

[10] Though not essential to resolution of this case, it is interesting to examine R.C. 2923.24 in the context of *any* misdemeanor. Consider, for example, the person who intentionally drives a car at a speed of thirty miles per hour in a twenty mile-per-hour zone. That person possesses a substance (the car) with criminal intent. The elements of 2923.24 are met and instead of a traffic ticket, the offender becomes a felon, faced with a mandatory prison sentence.

It is clear that any violation of R.C. 2915.02(A)(5), a misdemeanor for the first offense, is *necessarily* a violation of R.C. 2923.24, a felony. A comparison of the language of those statutes demonstrates the total overlap by R.C. 2923.24.

In *State* v. *Pirkey* (1955), 203 Ore. 697, 281 P. 2d 698, the Oregon Supreme Court affirmed the dismissal of an indictment which charged the defendant with check fraud, punishable by statute as either a misdemeanor or a felony, "in the discretion of the grand jury or the magistrate to whom complaint is made * * *." *Id.* at 699, 281 P. 2d at 700. Although the court decided the case mainly upon the ground of equal protection rather than that of cruel and unusual punishment,[11] it found that the proportionality principle was expressly disregarded by such a statute. The court explained: "* * * In the case at bar the offense, that is to say, the specific act which is prohibited, is clearly defined, but *it is difficult to see how two separate and distinct punishments can both be proportionate to the same identical offense when the sentencing court is given no discretionary power to choose between them.*" (Emphasis added.) *Id.* at 705, 281 P. 2d at 702.

It is inconceivable that the penalties for violations of R.C. 2923.24, a felony, and 2915.02(A)(5), a misdemeanor, could *both* be proportionate to the same conduct. The constitutional requirement of proportionality is flouted by the blanket approach taken by R.C. 2923.24.

### C

R.C. 2923.24, as applied to the facts in this case, elevates a misdemeanor to a felony and mandates at least a six-month prison sentence. Thus, R.C. 2923.24, as applied, violates the rule of proportionality and is unconstitutional. The indictment under R.C. 2923.24 must be dismissed. *Weems, supra.*

---

[11] A credible argument can be made that R.C. 2923.24 violates the constitutional requirement of equal protection, in light of R.C. 2915.02(A)(5). In *State* v. *Wilson* (1979), 58 Ohio St. 2d 52, 12 O.O. 3d 51, 388 N.E. 2d 745, upon which the majority relies, this court, per Locher, J., stated:

"The issue here is whether both statutes require the state to prove identical elements while prescribing different penalties. Judge Jackson, writing for the majority of the appellate court below, clearly stated that the test is 'whether, if the defendant is charged with the elevated crime, the state has the burden of proving an additional element beyond that required by the lesser offense.' *Therefore, if the statutes prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause.*" (Emphasis added.) *Id.* at 55-56, 12 O.O. 3d at 54, 388 N.E. 2d at 748.

See, also, *Cleveland* v. *Huff* (1984), 14 Ohio App. 3d 207, 14 OBR 235, 470 N.E. 2d 934; *Berra* v. *United States* (1956), 351 U.S. 131, 137-140 (Black, J., dissenting); *People* v. *Marcy* (Colo. 1981), 628 P. 2d 69; *Spillers* v. *State* (1968), 84 Nev. 23, 436 P. 2d 18; *State* v. *Pirkey, supra.* But, cf. *United States* v. *Batchelder* (1979), 442 U.S. 114; *State* v. *Miles* (1983), 8 Ohio App. 3d 410, 8 OBR 533, 457 N.E. 2d 944.

## VII

I would hold that the application of R.C. 2923.24 is constitutionally limited to persons who intend to use a criminal tool to commit a *felony*. Though my reasons differ, I believe that the court of appeals properly dismissed the counts charging appellees with violating R.C. 2923.24.