[Cite as *In re L.M.*, 2024-Ohio-2974.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| IN RE: L.M. | : | APPEAL NOS. | C-240048 |
|  |  |  | C-240049 |
|  | : | TRIAL NOS. | 23-915-02Z |
|  |  |  | 23-915-03Z |
|  | : |  |  |
|  | : | *O P I N I O N.* |  |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Reversed, Adjudications Vacated, and Cause Remanded

Date of Judgment Entry on Appeal: August 7, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Appellant L.M.

**CROUSE, Judge.**

**{¶1}** Appellant L.M. appeals from his adjudications of delinquency for receiving stolen property and possession of criminal tools. L.M. was alleged to be a delinquent child after he crashed a car that appeared to have been stolen. L.M. argues that his due-process rights were violated when the juvenile court failed to order a competency evaluation, even though he presented a reasonable basis for doing so. L.M. also argues that his adjudications were based on legally insufficient evidence and against the manifest weight of the evidence. Finally, L.M. argues that it was improper for the juvenile court to order him to pay restitution to the alleged owner of the car when the state failed to show that the car he crashed was the same car that had been stolen from the alleged owner. For the following reasons, we vacate L.M.'s adjudications, reverse the judgment of the juvenile court denying a competency evaluation, and remand the cause for further proceedings.

## I. Factual and Procedural History

**{¶2}** At around 11 p.m. on April 2, 2023, Cincinnati police officers Brandon Hiatt and Noah Reinhart were on patrol when they saw a white 2014 Kia Rio "go left of center on a double-yellow, pass another vehicle, and then attempt to get back into the right-hand lane and striking a pole, causing a motor vehicle accident." After deflating the Kia's deployed airbag with a knife, Reinhart found L.M. behind the wheel with no one else in the car. L.M. was badly injured.

**{¶3}** Reinhart observed that the steering column of the car had been "peeled," meaning that the area where the key would be inserted had been popped out so that the wiring was visible where the key hole would have been.

**{¶4}** Reinhart eventually determined that L.M. was 14 years old and had no

driver's license. On searching L.M., Reinhart discovered a screwdriver and a USB cord. Reinhart testified that these tools are commonly used to steal Kia and Hyundai vehicles. Reinhart also testified that he did not find any keys in the vehicle.

{¶5} Shortly before 11 p.m. that day, Shainelle Shannon reported the theft of a white 2014 Kia Rio from the parking lot of her apartment in Millvale. Shannon testified that she had borrowed the car from her mother, Diane Ras. Shannon knew that the car had been stolen because there was broken glass in the space where the car had been parked, and the glass had a distinctive "no smoking" sticker that had been on the car's rear window. Shannon and Ras testified that they did not know L.M., and neither of them permitted L.M. to drive the car. Ras testified that she never got the car back because it had been "totaled," and she did not receive any payment from her insurer because she did not carry comprehensive coverage.

{¶6} L.M. was eventually alleged to be a delinquent child for acts that, if committed by an adult, would constitute grand theft of a motor vehicle, receiving stolen property, and possession of criminal tools. L.M. was also alleged to be a juvenile traffic offender for reckless operation of a motor vehicle and operation of a motor vehicle without a license.

{¶7} At the probable-cause hearing, L.M. filed a motion requesting a competency evaluation. The magistrate scheduled a hearing on the competency docket for the next week. At the hearing on the motion, the magistrate asked for more information regarding L.M.'s condition and how the car accident had impaired his ability to assist in his own defense. The magistrate continued the hearing to the following week and ordered L.M. to produce his medical records to the court and the state. At the next hearing, defense counsel represented that she had the medical

records, but because they contained privileged information, she did not think it was appropriate to disclose the records to the state. The magistrate rescinded the order to produce the records. At the conclusion of the hearing, the magistrate decided that L.M. had not shown reasonable cause to order a competency evaluation. L.M. filed a motion to set aside the magistrate's decision, which the juvenile court denied.

{¶8}   Following a trial before a magistrate, the magistrate dismissed the charges of grand theft of a motor vehicle and receiving stolen property because "the State failed to prove a nexus linking Ms. Ras'[s] vehicle to the vehicle that [L.M.] was driving." However, the magistrate adjudicated L.M. delinquent on the charge of possession of criminal tools. The magistrate also adjudicated L.M. to be a juvenile traffic offender for reckless operation of a motor vehicle and operating a motor vehicle without a license.

{¶9}   In the case numbered 23-915-02Z, the state filed an objection to the magistrate's decision on the receiving-stolen-property charge. In the case numbered 23-915-03Z, L.M. filed an objection to the magistrate's decision on the possession-of-criminal-tools charge. The juvenile court heard arguments on the objections. Following a hearing, the juvenile court sustained the state's objection and overruled L.M.'s objection. The juvenile court adjudicated L.M. delinquent on both charges. The court then committed L.M. to the permanent custody of the Department of Youth Services but suspended his commitment "on the condition that [L.M.] obey all laws and orders of this Court." The court placed L.M. on probation and ordered that he pay $4,616 in restitution to Ras. The court also ordered that L.M. stay away from Shannon and Ras and that he complete rehabilitative programming provided through his probation. This appeal timely followed.

4

## II. Analysis

{¶10} L.M. argues in three assignments of error that the juvenile court erred in adjudicating him delinquent and ordering restitution to the alleged victim of his offenses.

### A. Competency Evaluation

{¶11} In his first assignment of error, L.M. argues that the juvenile court erred when it refused to order a competency evaluation. L.M. argues that this error requires vacation of his adjudications and a remand for a competency evaluation.

{¶12} It is a fundamental due-process requirement that, before a person may be convicted of a crime, the person must be legally competent to stand trial. *In re A.H.*, 12th Dist. Brown No. CA2017-05-005, 2018-Ohio-364, ¶ 12. This applies equally to adult criminal defendants and juveniles in delinquency proceedings. *Id.* A juvenile court's failure to comply with the juvenile competency statute is reversible error. *See id.* at ¶ 14; *see also State v. Were*, 94 Ohio St.3d 173, 177, 761 N.E.2d 591 (2002) (vacating appellant's convictions and remanding for new trial after finding that trial court violated appellant's constitutional and statutory rights to a competency hearing).

{¶13} R.C. 2152.51-.59 govern juvenile competency proceedings. The present juvenile competency statute was adopted in 2011, at a time when no separate statute governed competency determinations for juveniles. *See In re D.G.*, 4th Dist. Ross Nos. 13CA3382 and 13CA3383, 2014-Ohio-650, ¶ 24 ("Until September 30, 2011, the Revised Code did not contain any provisions for determining a juvenile's competence to stand trial. *In re Stone*, 12th Dist. Clinton No. CA2002-09-035, 2003-Ohio-3071, ¶7. With the enactment of 2011 H.B. 86 (effective September 30, 2011), the juvenile code now contains statutory provisions that govern juvenile competency

5

determinations."). Juvenile courts previously looked to the standards for adults set forth in R.C. 2945.37(A) and applied them "in light of juvenile rather than adult norms." *In re Gooch*, 2d Dist. Montgomery No. 19339, 2002-Ohio-6859, ¶ 7, quoting *In re Williams*, 116 Ohio App.3d 237, 242, 687 N.E.2d 507 (2d Dist.1997).

{¶14} This is an issue of first impression for this court. There are no cases in Ohio dealing with the situation in this case: refusal of the juvenile court to order a competency evaluation. The cases cited by the parties in their briefs pertain either to adult proceedings, juvenile court cases where a competency evaluation was ordered by the court prior to a competency hearing, or cases prior to the adoption of the current statutory framework for juvenile competency determinations enacted in 2011.

{¶15} R.C. 2152.51(A)(1) provides that:

"Competent" and "competency" refer to a child's ability to understand the nature and objectives of a proceeding against the child and to assist in the child's defense. A child is incompetent if, due to mental illness, due to developmental disability, or otherwise due to a lack of mental capacity, the child is presently incapable of understanding the nature and objective of proceedings against the child or of assisting in the child's defense.

{¶16} R.C. 2152.52(A) states:

In any proceeding under this chapter other than a proceeding alleging that a child is an unruly child or a juvenile traffic offender, any party or the court may move for a determination regarding the child's competency to participate in the proceeding.

{¶17} Pursuant to R.C. 2152.53(A), a court must, within 15 business days after

a motion is made for a competency determination, do one of the following:

> (1) Make a determination of incompetency under division (B) of section 2152.52 of the Revised Code;
>
> (2) Determine, without holding a hearing, whether there is a reasonable basis to conduct a competency evaluation;
>
> (3) Hold a hearing to determine whether there is a reasonable basis to conduct a competency evaluation.

{**¶18**} Pursuant to R.C. 2152.53(B), "[i]f the court holds a hearing" and "determines that there is a reasonable basis for a competency evaluation," "the court shall order a competency evaluation and appoint an evaluator." In this case, the court held a hearing and determined that there was not a reasonable basis to conduct a competency evaluation. We note that there is no definition of "reasonable basis" in the juvenile competency statute.

{**¶19**} An adult court's decision whether to order a competency evaluation is reviewed for an abuse of discretion. *State v. Cullen*, 12th Dist. Madison No. CA2022-08-016, 2024-Ohio-1916, ¶ 38. Because the juvenile court must determine whether there is a "reasonable basis" to conduct a competency evaluation, we likewise find that abuse of discretion is the appropriate standard of review in juvenile proceedings. When we conduct an abuse-of-discretion review, we will "not reverse the trial court's judgment unless the court has exercised its discretionary judgment over the matter in an unwarranted way or committed legal error." *In re I.J.*, 1st Dist. Hamilton No. C-220553, 2023-Ohio-2024, ¶ 9. However, we review a lower court's interpretation of a statute de novo. *In re A.J.*, 1st Dist. Hamilton No. C-210111, 2021-Ohio-3917, ¶ 7.

{**¶21**} At the hearing on the competency motion, defense counsel represented

that L.M. had recently suffered a traumatic brain injury and was experiencing severe depression. In the April 2023 car crash, L.M. suffered a concussion and nerve damage. Defense counsel represented that L.M. has no memory of the car accident. He also received serious physical injuries, including facial fractures and loss of several teeth, necessitating hospitalization for nearly a month. Defense counsel stated that she did not have cause to question L.M.'s competency prior to the April car crash, despite familiarity with him for about a year.[1] However, following the crash, L.M. seemed to be "much more delayed" than previously. The magistrate continued the hearing and ordered L.M. to produce medical records to support defense counsel's representations.

{¶22} At the subsequent hearing on the motion, defense counsel represented that she had the medical records, but felt it was inappropriate to enter the records as evidence because they contain information that should not be released to the state. However, defense counsel made additional representations as to L.M.'s condition. L.M. suffers from hallucinations and has suicidal ideations. L.M. is developmentally delayed, is on an IEP, and has educational issues. Defense counsel assessed that L.M. was slower than before the accident. He seemed not to understand when counsel told him things about the trial, and although he could "parrot" back information, counsel questioned whether he had actually absorbed the information.

{¶23} In response, the state acknowledged that L.M. had been in a serious car accident, had suffered serious physical injury, and showed signs of mental illness. However, the state emphasized that these factors do not suggest incompetency to stand trial.

{¶24} In her decision on the motion, the magistrate found "by the

---

[1] Defense counsel had been representing L.M. in an unrelated juvenile delinquency matter and was currently in the middle of trial on that case.

preponderance of the evidence that the defendant has failed to present sufficient evidence to overcome the presumption of competency." R.C. 2152.52(A)(2) provides for a presumption of competency under certain circumstances:

> In any proceeding under this chapter other than a proceeding alleging that a child is an unruly child or a juvenile traffic offender, if the child who is the subject of the proceeding is fourteen years of age or older and if the child is not otherwise found to have a mental illness or developmental disability, it is rebuttably presumed that the child does not have a lack of mental capacity. This presumption applies only in making a determination as to whether the child has a lack of mental capacity and shall not be used or applicable for any other purpose.

{¶25} The magistrate determined that, "Due to the youth being 14 years old, the burden is on the youth to rebut the presumption of competency." The magistrate noted specifically:

> Counsel's arguments focused on the youth's physical injuries rather than the concussion and the effects on the youth's mental capacity. The court also heard that the youth suffers from depression and that there were other concerns about his mental health that Counsel just became aware of after reviewing the youth's medical records. The youth was diagnosed with these issues prior to the start of his trial, and Counsel acknowledges that prior to trial, she had no concerns about youth's competency even though she has worked with him for about a year. The court does not find that there is a reasonable basis to conduct a competency evaluation for this youth. The court finds the State's

argument to be more persuasive, finding that the youth has not rebutted the presumption of competency.

{¶26} Following the magistrate's denial of the competency evaluation, L.M. filed a motion to set aside the magistrate's order. At the hearing on the motion before the juvenile court judge, defense counsel represented that L.M. continued to suffer from symptoms of the traumatic brain injury: persistent severe headaches, blurred vision, slurred or confused speech, and memory loss. From conversations with L.M., defense counsel reported that L.M. was confused and could not remember information. Defense counsel noted that L.M. "could parrot back information," but it was unclear whether he actually remembered and understood the information. L.M. also continued to exhibit symptoms of acute stress, including anxiety, trouble sleeping, and trouble concentrating. L.M. also experienced hallucinations and reported hearing voices.

{¶27} In response, the state argued that L.M. had appeared via Zoom at hearings and responded appropriately. The state also emphasized that much of L.M.'s basis for questioning his competency relates to physical symptoms, rather than signs that he lacked a present ability to understand and participate in the delinquency proceedings. Additionally, the state argued that counsel's suggestions of incompetence, without further objective evidence, failed to meet the "good cause" standard under R.C. 2945.37, which is the adult competency statute.

{¶28} Following the hearing, the court denied the motion to set aside the magistrate's decision. The court determined that, "[t]he standards in O.R.C. 2945.37(A) govern competency evaluations of juveniles, so long as they are applied in the light of juvenile, not adult norms. *In re Gooch*, 2nd Dist. Montgomery No. 19339,

[2002-Ohio-6859], ¶ 7." The court further determined that, "a defendant is presumed to be competent unless it is demonstrated by a preponderance of the evidence that their present mental condition makes them unable to understand the nature and objective of the proceedings against them or assist in their defense. *Id.* at ¶ 26." The court determined that "L.M. is presumed to be competent" and that there was "no reasonable basis for a competency evaluation to be conducted." The court held "by a preponderance of the evidence that L.M. failed to overcome the presumption of competence."

{¶29} As a preliminary matter, we reject the continued application of *In re Gooch* to the determination of competency in juvenile cases. *Gooch* was decided before the present juvenile competency statute was adopted in 2011, at a time when no separate statute governed competency determinations for juveniles. *See In re D.G.*, 4th Dist. Ross Nos. 13CA3382 and 13CA3383, 2014-Ohio-650, at ¶ 24. Juvenile competency determinations are now made under R.C. 2152.51-.59. *Id.*

{¶30} Under R.C. 2152.53(A), once a party or the court has raised the issue of competency by motion, the juvenile court may find that the juvenile is not competent without a hearing or a competency evaluation. Otherwise, the juvenile court's role is limited to determining whether there is a *reasonable basis* to conduct a competency evaluation. R.C. 2152.53(B). When the court finds that there is a reasonable basis, the court *shall* order a competency evaluation. *Id.*

{¶31} Here, the juvenile court held that L.M. had not rebutted the presumption of competency by a preponderance of the evidence, and as a result had not shown a reasonable basis to order a competency evaluation. This is not the correct standard when determining whether to order a competency evaluation. The

presumption of competency "applies only in making a determination as to whether the child has a lack of mental capacity and shall not be used or applicable for any other purpose." R.C. 2152.52(A)(2). Accordingly, the presumption is inapplicable to the court's determination of whether a reasonable basis exists to order an evaluation. The juvenile court's review is only whether there is a reasonable basis for an evaluation. L.M. does not have to rebut a presumption of competency to be eligible for an evaluation.

{¶32} L.M.'s attorney represented that L.M. had suffered a traumatic brain injury, and as a result, he no longer appeared to be able to process information she provided, as he had been previously. The attorney had been working with L.M. for around a year, and so she had ample time to become familiar with L.M. and his cognitive abilities. The information L.M.'s attorney presented regarding L.M.'s recent cognitive difficulties, including the specific medical basis arising from his recent brain trauma, set forth a reasonable basis to conduct a competency evaluation. *See, e.g., Were*, 94 Ohio St. 3d at 176, 761 N.E.2d 591 (relying heavily on defense counsel's "repeated allegations" that "cast doubt" on defendant's competency in finding that the trial court violated defendant's constitutional and statutory right to a competency hearing).

{¶33} The state argues that mental illness is insufficient to find that a juvenile is not competent to stand trial. R.C. 2152.58(D)(2) states, in relevant part:

> The court shall not find a child incompetent to proceed solely because the child is receiving or has received treatment as a voluntary or involuntary mentally ill patient * * *, is or has been institutionalized * * *, or is receiving or has received psychotropic or

12

other medication, even if the child might become incompetent to proceed without that medication.

**{¶34}** We agree that this standard is relevant to an eventual competency determination and may inform the court's evaluation of whether a reasonable basis exists to order a competency evaluation. However, in this case, L.M.'s condition is not limited to mental illness, institutionalization, or psychotropic or other medication. L.M.'s attorney informed the court that L.M.'s ability to assist in his defense has been diminished since the car crash and cited his documented brain injury as a potential reason.

**{¶35}** We hold that the juvenile court applied the incorrect legal standard under the juvenile competency statute in making its decision of whether to order a competency evaluation of L.M and abused its discretion in refusing to order a competency evaluation. Accordingly, we sustain L.M.'s first assignment of error. We vacate L.M.'s adjudications and dispositions, reverse the court's judgment denying his motion for a competency evaluation, and remand the cause to the juvenile court with instructions that the court shall order a competency evaluation.

### B. *Weight and Sufficiency of the Evidence*

**{¶36}** In his second assignment of error, L.M. argues that his adjudications of delinquency for receiving stolen property and possession of criminal tools were not based on legally sufficient evidence and were against the manifest weight of the evidence.

**{¶37}** A decision that the evidence was legally insufficient would result in a dismissal of the charges and discharge of L.M. from further prosecution, *In re S.J.*, 2023-Ohio-3441, 225 N.E.3d 368, ¶ 61 (1st Dist.), but a decision that the juvenile

court's judgment was against the manifest weight of the evidence would result only in a new trial. *In re J.P.*, 1st Dist. Hamilton Nos. C-220647 and C-220648, 2023-Ohio-4816, ¶ 17. Because we have determined that L.M.'s adjudications must be vacated and the cause remanded for a competency evaluation, we limit our review to the sufficiency of the evidence, should L.M. be found competent for a retrial.

**{¶42}** "Challenges to the sufficiency and weight of the evidence in a juvenile case are reviewed under the same standards of review applied in adult criminal cases." *In re S.J. at* ¶ 19. In reviewing the sufficiency of the evidence, our task is to ask "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

### 1. Receiving Stolen Property

**{¶43}** L.M. argues that the evidence on the charge of receiving stolen property was legally insufficient because the state did not show that the car he was driving had been stolen. Although the state presented testimony from Ras and Shannon that Ras's 2014 Kia Rio had been stolen, the state never established that the Kia L.M. had been driving was the one stolen from Ras. L.M. argues that, because the state did not show that Ras was the owner of the car, the state had failed to prove that he was not authorized by the owner of the vehicle to possess it.

**{¶44}** R.C. 2913.51(A) defines the offense of receiving stolen property:

No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

14

**{¶45}** In a prosecution for receiving stolen property, the defendant's knowledge will usually have to be proven through circumstantial evidence. *State v. Funderburke*, 4th Dist. Ross No. 19CA3689, 2020-Ohio-3847, ¶ 11. Courts have routinely held that a defendant may properly be found guilty of receiving stolen property where "an accused's possession of recently stolen property is not satisfactorily explained in light of surrounding circumstances developed from the evidence." *Id.* Some of the circumstances that are appropriate to consider include "1) the accused's unexplained possession of the property; 2) the nature of the property; 3) the frequency with which such property is stolen; 4) the nature of the accused's commercial activity; and 5) the length of time between the theft and recovery of the property." *Id.*, quoting *State v. Woodruff*, 4th Dist. Ross No. 07CA2972, 2008-Ohio-967, ¶ 9. "The State does not have to offer the testimony of the actual owner, but [it] must present some evidence the property was stolen." *State v. Renne*, 5th Dist. Licking No. 11-CA-127, 2012-Ohio-3623, ¶ 27.

**{¶46}** A review of the evidence shows that there is scant support for the conclusion that the Kia possessed by L.M. belonged to Ras. The undisputed evidence consists of (1) the match between Ras's car and the subject vehicle, each being identified as a white 2014 Kia Rio, and (2) Reinhart's body-worn camera video, showing a broken window in the rear door on the driver's side of the car, which matches Shannon's testimony that the rear window had been broken.

**{¶47}** However, to sufficiently prove L.M. guilty of receiving stolen property, the state need not present the testimony of the actual owner. *See Renne* at ¶ 27. The state only needs to show that the property had been stolen and that the circumstances indicate that L.M. either knew or should have known that the property had been

stolen. *See Funderburke* at ¶ 11. Officer Reinhart testified that:

- L.M. had been in the driver's seat of the car;

- L.M. was alone in the car at the time of the crash;

- L.M. did not have a valid driver's license;

- L.M. had a screwdriver and a USB cord in his pockets, which are tools commonly used to steal Kia vehicles;

- The steering column of the car had been "peeled," indicating that someone had removed the mechanism where the car's key is inserted;

- The "peeled" condition of the steering column was visible from the driver's seat; and

- No keys were found in the car or on L.M.

{¶48} L.M. did not provide any explanation for his possession of the car. Officer Reinhart testified that he had seen Kia vehicles stolen by the use of a screwdriver and USB cord in "numerous" cases, and that such thefts are a problem statewide. L.M. was 14 years old at the time of the crash and consequently was not yet eligible to obtain a driver's license.

{¶49} We hold that the evidence is sufficient to show that L.M. knew or should have known that the car was stolen. The state did not need to show a nexus to the alleged owner of the car to present legally sufficient evidence to prove a charge of receiving stolen property. Accordingly, L.M.'s adjudication on this charge was based on legally sufficient evidence.

### 2. Possession of Criminal Tools

{¶50} L.M. was charged with possession of criminal tools based on the screwdriver found in his possession following the car crash. L.M. argues that the

condition of the screwdriver does not support an inference that it was used in the theft of the car. L.M. attempts to distinguish his screwdriver from the one used in *State v. Sanders*, where the screwdriver bore physical signs of having been used to pry out the ignition of a stolen car. *State v. Sanders*, 9th Dist. Summit No. 23504, 2007-Ohio-2898, ¶ 15.

{¶**51**} Under R.C. 2923.24(A), "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." A conviction for possession of criminal tools requires the state to prove "both control of the article and the specific intention to use the article to commit a crime." *State v. Dorsey*, 1st Dist. Hamilton No. C-110623, 2012-Ohio-4043, ¶ 7, quoting *State v. McDonald*, 31 Ohio St.3d 47, 49, 509 N.E.2d 57 (1987).

{¶**52**} It is not necessary to prove that the criminal tool in question was actually used in the commission of a crime. It is sufficient to show that the defendant had the intent to use the tool in a crime. *See Sanders* at ¶ 13 ("To establish that Appellant was in possession of a criminal tool, the State was required to establish that he possessed or had under his control an item, with the purpose of using it criminally.").

{¶**53**} Based on the state's evidence, there was sufficient evidence to show that the car had been stolen and that the screwdriver and USB cord found in L.M.'s possession are tools specifically suited to the theft. L.M. was found in the car without keys, and with tools—including the screwdriver—that were particularly suited to steal that model of car. Accordingly, the state presented sufficient evidence of the offense of possession of criminal tools.

{¶**54**} Accordingly, we overrule the portion of L.M.'s second assignment of

error that alleges that his adjudications of delinquency were based on legally insufficient evidence. We decline to consider the portion of this assignment of error alleging that the adjudications were against the manifest weight of the evidence as moot. *See* App.R. 12(A)(1)(c).

### C. Restitution

**{¶55}** In his third assignment of error, L.M. argues that the juvenile court erred in ordering restitution to Ras. At disposition, the juvenile court ordered L.M. to pay restitution to Ras as the alleged owner of the stolen car. L.M. argues that the state failed to present any evidence that the car actually belonged to Ras, and therefore the state has not shown that Ras is an appropriate victim to receive restitution.

**{¶56}** Because we have vacated L.M.'s adjudications and remanded the cause for the court to order a competency evaluation, L.M.'s third assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

### III. Conclusion

**{¶57}** For the foregoing reasons, we vacate the juvenile court's adjudications and dispositions of L.M., and we reverse the court's judgment denying L.M. a competency evaluation. We remand the cause to the juvenile court for the court to order a competency evaluation of L.M. and for further proceedings consistent with this opinion.

Judgments reversed, adjudications vacated, and cause remanded.

**BOCK, P.J.**, and **KINSLEY, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.