Zimmerman, J.
 

 Amended Substitute Senate Bill No. 18, enacted by the present General Assembly as an emergency measure, creates a Post-war Commission of the state of Ohio. In substance, the pertinent provisions of the act are:
 

 Section 1 creates a Post-war Program Commission of the state of Ohio, consisting of twenty-one members as follows: The president of the Senate, the administrator of the Bureau of Unemployment Compensation, the Director of Welfare, the Director of Highways, the Director of Public Works and the Tax Commissioner,
 
 *498
 
 the president
 
 pro tempore
 
 of the Senate and five members of the Senate appointed by the president thereof, the speaker of the House of Representatives and five members of the House of Representatives appointed by the speaker thereof, and three members appointed by the Governor, who may or may not be officers or employees of the state or any political subdivision thereof.
 

 Next follow recitations as to the time when appointments to the commission shall be made, the filling of vacancies, the calling of a meeting of the commission by the Governor, the selection of officers, the employment of a secretary and assistants, and the payment of expenses upon vouchers signed by the chairman and secretary. It is also provided that the members of the commission shall serve without pay, but shall be reimbursed for their actual traveling and other necessary expenses incurred in connection with the duties of the commission.
 

 Section 2 states the purpose of the commission, which shall be to gather data and information relative to the post-war problems which will confront the 'state and its inhabitants; to assist the state and its political subdivisions in the preparation of plans for a post-war public-works program, including the elements of cost, and financing; to consider the establishment of not more than four additional state parks, with the authority, subject to the approval of the Board of Control, to lease prospective sites for not more than two years with the privilege of purchase, or to acquire options to purchase in the name of the state; and to investigate and determine the manner in which the state can help to restore those now in the armed forces or engaged in the war effort to private industry, with the possibility of temporary relief to such persons by the state.
 

 The section next contains directions to various state
 
 *499
 
 and local agencies to render assistance to the commission in its work. It authorizes the Governor, upon recommendation of the commission, to appoint an advisory council of not more than fifteen members to advise and assist the commission, and then stipulates as to the submission of special reports and tire submission of a general report by the commission to the Governor and General Assembly, with recommendations, on or before January 15, 1945, which will be after the convening of the next General Assembly.
 

 Section 3 appropriates the sum of $50,000 to meet the operating expenses of the commission and the additional sum of $400,000 for the purpose of acquiring park properties' and making improvements thereon when such acquisition has been authorized by the General Assembly. It further provides that not more than $50,000 of such appropriation of $400,000 may be used to acquire leases with the privilege of purchase, to pay rentals, or to acquire options to purchase lands.
 

 The petitions herein, which are similar, allege the official capacities of the relators; the enactment of Amended Substitute Senate Bill No. 18, a copy of which is attached to each petition and made a part thereof; the sufficiency of funds in the state treasury to pay the expenses of the commission; the appointment of the members of the commission; the meeting of the commission at Columbus, Ohio, on August 11, 1943, pursuant to the call of the Governor; the selection of the commission officers; and the incurring of expenses by the relators in connection with their duties as commission members. Relator Herbert claims the expenditure of 67 cents for a meal at Cleveland, and the relator Fair, the expenditure of $11 for actual traveling and other necessary expenses.
 

 Further, the petitions aver that the relators presented proper vouchers to the respondent, upon which he refused to issue warrants; .that the relators are
 
 *500
 
 without remedy other than mandamus; and that they will be prevented from performing their duties unless the court orders the respondent to act in accordance with the prayers of the petitions.
 

 In his brief supporting the demurrers the respondent contends that the demurrers should be sustained for the following reasons:
 

 “1. Amended Substitute Senate Bill No. 18 of the 95th General Assembly is unconstitutional and_ creates no Post-war Program Commission in that:
 

 “(a) It provides for and directs the appointment of a majority of the members of such commission from the membership of the General Assembly in violation of Section 19 of Article II of the Constitution.
 

 “ (b) It purports to create a commission of twenty-one members, the majority of whom are appointed by the General Assembly in violation of Section 27 of Article II.
 

 “2. Since a majority of the required twenty-one members has not been validly appointed, the commission has not yet been created and can perform none of the duties prescribed for it in the act or expend the moneys appropriated to it.
 

 “3. The vouchers presented by the relators to the defendant do not represent a valid claim against the state of Ohio and, consequently, the defendant is without authority in law to issue his warrants thereon.”
 

 Section 19, Article II of the Constitution of Ohio reads:
 

 “No
 
 senator or representative shall, during the term for which he shall have been elected, or for one year thereafter, be appointed to any civil office under this state, which shall be created or the emoluments of which, shall have been increased, during the term, for which he shall have been elected.”
 

 Section 27, Article II of the Constitution provides:
 

 “The election and appointment of all officers, and
 
 *501
 
 the filling of all vacancies, not otherwise provided for by this Constitution, or the Constitution of the United States, shall be made in such manner as may be directed by law; but no appointing' power shall be exercised by the General Assembly, except as prescribed in this Constitution * * * .”
 

 A ‘ ‘ civil office ” or a public office of a civil nature, as defined by the Ohio cases, is a charge or trust conferred by public authority for a public purpose, with independent and continuing duties, involving in their performance the exercise of some portion of the sovereign power. See
 
 State, ex rel. Bricker, Atty. Genl.,
 
 v.
 
 Gessner,
 
 129 Ohio St., 290, 195 N. E., 63, and the cases therein cited;
 
 State, ex rel. Armstrong,
 
 v.
 
 Holliday, Aud.,
 
 61 Ohio St., 171, 172, 55 N. E., 175;
 
 State, ex rel. Stanton, Pros. Atty.,
 
 v.
 
 Callow,
 
 110 Ohio St., 367, 143 N. E., 717;
 
 Scofield
 
 v.
 
 Strain, Mayor, ante,
 
 290. Compare,
 
 State, ex rel. Barney,
 
 v.
 
 Hawkins, Secy. of State,
 
 79 Mont., 506, 257 P., 411, 53 A. L. R., 583;
 
 State, ex rel. McIntosh,
 
 v.
 
 Hutchinson, Secy. of State,
 
 187 Wash., 61, 59 P. (2d), 1117, 105 A. L. R., 1234.
 

 Similarly, in 53 A. L. R., at page 595 of the annotation it is said:
 

 1 ‘ * * *
 
 a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; * * * .”
 

 The act involved establishes a commission, the described functions of which, for the most part, consist of finding facts, assisting in the formulation of plans and the making of recommendations. Surely, this cannot be said to constitute the exercise of sovereign powers.
 

 All the commission is authorized to do, under the act, in relation to new state parks, is to consider the
 
 *502
 
 advisability of establishing them, and if and when it decides such parks should be established, to lease or take options of purchase on prospective sites, subject to the approval of the Board of Control.
 

 As we read the act in its entirety, the only occasions upon which the commission might be said to be exercising sovereign power would be in the actual leasing of land or in the acquisition of options to purchase land, in the name of the state. So far as we know, it may never enter into a lease or acquire an option. Certainly, the petitions in the present cases do not suggest the performance of any acts of that kind, or that any expenses were incurred by relators in connection with leasing or taking options on prospective sites for new state parks.
 

 It was held in
 
 Kent
 
 v.
 
 Perkins,
 
 36 Ohio St., 639, 642, that a statute may be perfectly constitutional where one course of conduct is pursued under it and it will not be invalidated because permitting of another course of conduct which has not been attempted. Likewise, the case of
 
 Castle
 
 v.
 
 Mason,
 
 91 Ohio St., 296, 110 N. E., 463, Ann. Cas., 1917A, 164, suggests the proposition that the constitutionality or unconstitutionality of a statute in a particular case may depend on what has been done under it. “A statute may be invalid as applied to one state of facts, and yet valid as applied to another.”
 
 Dahnke-Walker Milling Co.
 
 v.
 
 Bondurant,
 
 257 U S., 282, 289, 66 L. Ed., 239, 243, 42 S. Ct., 106;
 
 W. & J. Sloane
 
 v.
 
 Commonwealth,
 
 253 Mass., 529, 534, 149 N. E., 407, 409.
 

 Statements appear in other cases to the effect that a court will not anticipate'prospective incidents which may never take place, to declare a law unconstitutional.
 
 State, ex rel. Martin, Atty. Genl.,
 
 v.
 
 Howard,
 
 96 Neb., 278, 295, 147 N. W., 689, 695;
 
 Lehman
 
 v.
 
 Morrissett, State Tax Commr.,
 
 162 Va., 463, 468, 174 S. E., 867, 870;
 
 State Road Commission
 
 v.
 
 Kanawha County
 
 
 *503
 

 Court,
 
 112 W. Va., 98, 107, 163 S. E., 815, 819. And constitutional questions will not be decided until the necessity for decision arises on the record before the court.
 
 State, ex rel. Clarke,
 
 v.
 
 Cook, Auditor,
 
 103 Ohio St., 465, 134 N. E., 655;
 
 Rucker
 
 v.
 
 State,
 
 119 Ohio St., 189, 162 N. E., 802;
 
 Wiggins
 
 v.
 
 Babbitt,
 
 130 Ohio St., 240, 198 N. E., 873.
 

 Consequently, the court does not consider itself called upon at this time to decide the question of whether the act involved is unconstitutional with respect to conditions not shown to exist.
 

 At this point it is only fair to say that a majority of the members of this court entertains the opinion that if the relators and the members of the General Assembly serving on the commission should undertake to lease land or take options on land for prospective park sites in the name of the state, they would be engaged in the exercise of sovereign power in such a way as to constitute them civil‘officers within the inhibitions of Section 19, Article II of the Constitution.
 

 The rule is well recognized, however, that a statute may operate constitutionally as to one part and unconstitutionally as to another. If the valid part is separable, the portion which is constitutional may stand, providing such statute is still capable of fulfilling the apparent legislative intent. 8 Ohio Jurisprudence, 194, Section 93
 
 et
 
 seq.;
 
 State, ex rel. Greenward Realty Co.,
 
 v.
 
 Zangerle, Auditor,
 
 135 Ohio St., 533, 21 N. E. (2d), 662.
 

 Here, the bill in question was originally passed by both houses of the General Assembly without any reference whatever to new state parks. The House of Representatives thereafter requested its return, to which the Senate acceded, whereupon the house re-passed the bill with amendments pertaining to parks. At first the Senate refused to concur in the amend
 
 *504
 
 ments, but later did so and the bill was finally promulgated and published in its present form.
 

 It is apparent that the objectionable part of the act is severable from the rest of it, and that the General Assembly would have adopted it without the objectionable features is demonstrated by the fact that it had done so.
 

 Does anything appear disclosing a transgression of Section 27, Article II of the Constitution?
 

 That section denies to the General Assembly the exercise of appointing power with respect to “officers.”
 
 Gleason
 
 v.
 
 City of Cleveland,
 
 49 Ohio St., 431, 31 N. E., 802.
 

 Interpreting Section 27, in the case of
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Kennon,
 
 7 Ohio St., 546, 556, Judge Brinkerhoff said in the opinion:
 

 “The phrase ‘appointing power’, as here used, is. one of no ambiguous signification. When employed in reference to matters pertaining to government, or to the distribution of the powers of government, it means the power of appointment to office — the power to select and indicate by name individuals to hold office, and to discharge the duties and exercise the powers of officers.”
 

 Again, at page 562 of the same opinion he remarked:
 

 “We conclude, therefore,
 

 “1. That the selection and designation by name, of the defendants, by the General Assembly, to exercise continuously, and as a part of the regular and permanent administration of the government, important public powers, trusts, and duties, is an appointment to office.”
 

 Later, in the case of
 
 Gleason
 
 v.
 
 City of Cleveland, supra,
 
 this court held in a
 
 per curiam
 
 opinion that if appointments by the General Assembly to a legislative commission are “impersonal,” that is, not of specific persons but merely of those who may happen to be
 
 *505
 
 members of a particular group at a particular time, there is no violation of Section 27.
 

 It is to be noted that at no place in Amended Substitute Senate Bill No. 18 is there a designation of any specific individual to serve on the commission.
 

 Moreover, Section 8, Article II of the Constitution of Ohio, recites:
 

 “Each house, except as otherwise provided in this Constitution, shall choose its own officers, and determine its own rules of proceeding,
 
 *
 
 * *; and shall have all powers necessary, * * * to obtain, through committees or otherwise, information affecting legislative action under consideration or in contemplation * *
 

 The General Assembly has many times created commissions authorized to investigate and report their findings as to conditions with reference to which it contemplated enacting legislation, placing thereon members of the Senate, the House of Representatives, and others, as was done in the act under consideration. That practice having been accepted, if not expressly approved, as legitimate and proper for such a long period, if kept within the limitations herein indicated, we are disinclined to hold it invalid.
 

 We are sustaining the demurrers on the ground, and only on the ground, that the petitions do not contain allegations sufficient to show that the expenditures for which reimbursement is now sought were made in the exercise of functions within the powers of the commission, as pointed out in this opinion. It is well settled that a writ of mandamus will not issue unless a clear legal right thereto is shown.
 
 State, ex rel. Baker,
 
 v.
 
 Hanefeld, Dir.,
 
 134 Ohio St., 540, 18 N. E. (2d), 404.
 

 Relators are given leave to amend their petitions forthwith by setting forth the nature of the duties in
 
 *506
 
 which they were engaged as commission members when and for which their claimed expenditures were made.
 

 Demurrers sustained.
 

 Weygandt, C. J., Matthias, Hart, Bell, Williams and Turner, JJ., concur.