Taet, J.,
concurring. As appellants contend, unless the so-called contract between Union Carbide & Carbon Corporation and Loomis Hensel Garage is a “contract” within the meaning of that word as used in Sections 1333.06 and 1333.07, Revised Code, this court, in deciding this case, will not be confronted with any question as to the validity of the so-called “nonsigner provisions” set forth in those statutory sections. It is fundamental that a court should avoid constitutional questions which need not necessarily be considered in reaching a decision on the case before it. State, ex rel. Herbert, v. Ferguson, Aud. (paragraph two of the syllabus), 142 Ohio St., 496, 52 N. E. (2d), 980; Belden v. Union Central Life Ins. Co. (paragraph seven of the syllabus), 143 Ohio St., 329, 55 N. E. (2d), 629.
In my opinion, it is clearly apparent from a mere reading of *187 the so-called contract between Union Carbide & Carbon Corporation and Loomis Hensel Garage that it is not a contract, because there is no promise set forth therein by either party which is supported by any legal consideration. The so-called contract reads as follows:
“This agreement made this 8th day of March, 1954, by and between Union Carbide & Carbon Corporation, a New York corporation, having an office at 30 East 42nd Street, New York, N. Y. and being authorized to do business in the state of Ohio (hereinafter called ‘Carbide’) and Loomis Hensel Garage, having an office at 2120 Lee Rd., Cleveland Heights, Ohio (hereinafter called the ‘Retailer’);
“ Witnesseth:
“Whereas, (a) an anti-freeze produced by Carbide is and will be distributed to retailers in the state of Ohio under the registered trademark ‘Prestone’ owned by Carbide (said commodity being hereafter called the ‘Commodity’); (b) the Commodity is in free, fair and open competition within said state with commodities of the same general class produced by others; (c) stocks of the Commodity are maintained within said state for sale and distribution to retailers therein; and (d) Retailer is engaged in the sale and distribution at retail of the Commodity within said state; and
‘ ‘ Whereas, minimum retail resale prices for the Commodity, heretofore established under the provisions of the Fair Trade Act of said state (hereinafter called the ‘Act’), are to terminate on Alarch 31, 1954 and the parties hereto wish to establish under the Act after such date the minimum retail resale prices hereinafter provided for;
“Now, therefore, in consideration of the premises and of the agreements herein contained and the benefits contemplated hereby, and in consideration of such sales and deliveries of the Commodity as may be made to Retailer from time to time while this agreement shall be in effect, and the purchase thereof by Retailer, the parties hereto agree as follows:
“1. Retailer shall not (except as specifically permitted by this agreement) advertise, offer for sale or sell the Commodity in said state at less than the minimum retail prices specified in schedule A attached hereto, plus in the case of each retail sale, *188 the amount of applicable sales and excise taxes. Carbide by-written notice to Retailer may from time to time amend schedule A, effective on or after the.date of the giving of such notice as provided in such notice, so as to change the minimum retail selling prices therein specified. Such notice may take the form of a revised schedule A.
‘ ‘ 2. Except as authorized by schedule A or a revision thereof, the offering or giving of any article of value in connection with the retail sale of the Commodity; the offering or making of a concession (whether by giving of coupons or otherwise) in connection with any such sale; or the sale or offering for sale of the Commodity in combination with other commodity or commodities shall constitute a breach of this agreement by Retailer.
“3. This agreement may be terminated by either party on ten (10) days’ written notice to the other, provided, however, that such termination shall not affect the rights or obligations of either party under the Act or by reason of an agreement made pursuant thereto.
“4. The Commodity may be sold without reference to this agreement to government agencies, to consumers buying for use in their automotive fleets or for use in their non-automotive equipment, or to purchasers buying under such other circumstances as may be specifically permitted by the Act.
“5. Any notice given hereunder shall be well and sufficiently given by delivering the same personally to the party to whom it shall be addressed, or by mailing the same in a sealed postpaid envelope addressed to such party at its address hereinabove given
“6. This agreement shall become effective April 1, 1954.
“In witness whereof, the parties hereto have executed this agreement on the day and year first above written.
“Union Carbide & Carbon Corporation,
“By its Division,
“National Carbon Company,
“By R. P. Bergan,
“Division Vice President,
“Loomis Hensel Garage,
“By Ray Hensel.
“Effective Date
“April 1, 1954
*189 “Schedule A
“Fair Trade Prices
Minimum Retail Resale
“Product Container (Fair Trade) Prices
“ ‘Prestone’ brand Gallon cans $2.95 per gallon anti-freeze
‘ ‘ Quart cans 3.20 per gallon
“Quart cans 0.80 per quart”
This so-called contract does set forth promises by Loomis Hensel Garage. However, there is no definite promise by Union Carbide & Carbon Corporation and there is no reference to anything else of a definitive nature either in the words of this so-called contract or elsewhere in the record which could fairly be said to represent a legal consideration for the promises of Loomis Hensel Garage, i. e., either some bargained for detriment to Union Carbide & Carbon Corporation or benefit to Loomis Hensel Garage.
It is elementary that a promise without any legal consideration for the promise cannot amount to a contract. See 12 American Jurisprudence, 565, Section 72; 17 Corpus Juris Secundum, 421, Section 71; 11 Ohio Jurisprudence (2d), 295, Section 58.
Since there is no contract within the meaning of Section 1333.06 or 1333.07, Revised Code, there is obviously no basis for the injunction provided for by Section 1333.08, Revised Code. Hence, I concur in the judgment so far as it reverses the judgment of the Court of Appeals and instructs that court to dissolve the injunction heretofore issued.