OPINION
Defendant-appellant, Philip Mather Price ("appellant"), appeals from the divorce decree entered by the Geauga County Court of Common Pleas, Domestic Relations Division. Appellant only disputes the trial court's determination that several assets were marital and not his separate property.
Appellant and Karenann Jones Price ("appellee") married on August 16, 1980. Two children were born as issue of the marriage. On September 22, 1981, fifty-five (55) acres of property in Chardon was purchased. Appellant testified that the entire purchase price was funded by monies received from his family following the sale of certain property in Florida and from disbursements from his trust funds. The property was titled in both parties' names in joint and survivorship form. A portion of the land was sold in 1988. The sale proceeds were placed in a joint account and not treated as appellant's separate property.
In 1982, the parties purchased a home in Wickliffe for sixty-five thousand dollars ($65,000). Appellant testified he provided the thirty-five thousand dollar ($35,000) down payment from trust funds while the remainder of the property was funded by a joint mortgage. The title of the property was in both parties as husband and wife.
In 1985, the parties purchased the East Willow Pet Hospital and the real estate upon which it was located in Eastlake. The total purchase price was one hundred thousand dollars ($100,000). The down payment of twenty-four thousand dollars ($24,000) was made from appellant's trust. Appellant testified he provided another twenty-five thousand dollars ($25,000) for improvements, but did not specify what improvements were made.
In 1991, the parties decided to build a residence on the Chardon property. They obtained two construction loans for the property, one being a bridge loan using the Wickliffe property as collateral. A signature loan also was obtained. These loans totaled four hundred thousand dollars ($400,000). Over seven hundred fifty thousand dollars ($750,000) was spent constructing the Chardon home. It later was appraised for five hundred thousand dollars ($500,000). Appellant testified he provided funds from his trusts to partially pay for the building costs. Both parties were responsible for the mortgages.
On January 20, 1998, appellee filed for divorce. Trial was held on October 20 and 21, 1999. On September 27, 2000, the trial court issued its judgment entry granting the parties a divorce. The trial court determined that the above-mentioned assets were marital property. Appellant has appealed from this ruling.
Appellant assigns the following error for review:
 "The trial court erred as a matter of law to the prejudice of the Appellant and abused its discretion by distributing property without following the statutory mandates of R.C. 3105.171."
 The adjudication of this appeal requires a brief preliminary discussion of several property division rules in divorce cases. These rules include transmutation (the conversion of separate property into marital property through the actions of the property's owner), gifts (the intentional voluntary conveyance of a property right to another) and traceability (the tracing of separate property back from a potential marital asset to its root).
There was a time when transmutation was the predominate principle under Ohio law. See, e.g., Black v. Black (Nov. 4, 1996), Stark App. No. 1996CA00052, unreported, 1996 Ohio App. Lexis 6008. However, the Ohio Legislature changed the law, effective January 1, 1991, through the enactment of R.C. 3105.171.
It is clear that the Legislature enacted R.C. 3105.171 to clarify that the form of ownership was not the determinative factor. Further, the law of Ohio is that traceability of an asset is the major means for determining whether an asset is separate or marital property. Okos v.Okos (2000), 137 Ohio App.3d 563; Zeefe v. Zeefe (1998),125 Ohio App.3d 600; Modon v. Modon (1996), 115 Ohio App.3d 810; Peck v.Peck (1994), 96 Ohio App.3d 731; Seybert v. Seybert (Dec. 14, 2001), Trumbull App. No. 99-T-0119, unreported, 2001 Ohio App. LEXIS 5646; Lewisv. Lewis (Nov. 5, 2001), Clermont App. Nos. CA2001-01-002, CA2001-01-005, unreported, 2001 Ohio App. LEXIS 4930; Mays v. Mays (Oct. 12, 2001), Miami App. No. 2000-CA-54, unreported, 2001 Ohio App. LEXIS 4599; Leadyv. Leady (Aug. 31, 2001), Fulton App. No. F-00-027, unreported, 2001 Ohio App. LEXIS 3882; Doane v. Doane (May 2, 2001), Guernsey App. No. 00CA21, unreported, 2001 Ohio App. LEXIS 2029.
Of course, traceability is not applied in a vacuum. In the process of tracing ownership of a particular asset, the court must evaluate such factors as each party's basis for his or her claim of an ownership interest (e.g., by contract, by gift, etc.). The party attempting to prove that the asset is traceable separate property must establish such tracing by a preponderance of the evidence. Matic v. Matic (July 27, 2001), Geauga App. No. 2000-G-2266, unreported, 2001 Ohio App. Lexis 3360, at 6. The party seeking to prove that he or she has a property interest by contract or gift has the burden of proving such claimed property interest. However, in the case of a "gift," the party asserting a gifted interest must prove such interest by clear and convincing evidence. R.C. 3105.171(A)(6)(a)(vii); Barkley v. Barkley (1997),119 Ohio App.3d 155, 168.
In this case, appellee does not claim that she acquired an interest in any of the parties' real property at issue by contract. Such assertion of a contract right by appellee appears nowhere in the record or appellee's brief. Appellee did raise the issue of a gift below but the trial court did not make any finding of such and appellee did not appeal this ruling. Therefore, the issue of whether appellant gifted appellee with an interest in the property is not now before this court.[1]
The trial court makes no finding that appellee acquired any interest in the parties' real property by contract. Moreover, there is no legal authority in Ohio that supports the proposition that one spouse's willingness to co-sign for a mortgage debt on a parcel of real property, without more, becomes "consideration" that converts the other spouse's traceable separate property down payment into a contractually converted marital asset. Indeed, such a proposition would be misplaced and would contravene the case law of Ohio and the Legislature's traceability concept in every case involving third party financing. Under this misplaced proposition, a benevolent co-signing spouse would obtain a "contractual" interest in real property held solely in the other spouse's name, despite the parties' intention that the property remain the sole asset of the titleholding spouse.
In the present case, the trial court also makes no finding that any gift had been intended or made by appellant to appellee. While the trial court made detailed findings, the word "gift" appears nowhere in those findings.
Therefore, the issues of a contract or gift claim by appellee are not before this court in this appeal. It would be inappropriate and improper for this court to address issues on appeal that were not addressed by the court below.
Additionally, the issue as to the constitutionality or retroactivity of R.C. 3105.171 was not raised by appellee or addressed by the trial court in the lower court proceedings. We are mindful of the principle promulgated by the Supreme Court of Ohio that "`[c]onstitutional questions will not be decided until the necessity for a decision arises on the record before the court.'" Christensen v. Bd. of Commrs. on Grievancesand Discipline (1991), 61 Ohio St.3d 534, 535, quoting State ex rel.Herbert v. Ferguson (1944), 142 Ohio St. 496, paragraph two of the syllabus. We will not violate that principle by pursuing an unnecessary analysis of those issues in this case. We note, however, that the Supreme Court of Ohio has unequivocally addressed the retroactivity issue inSchulte v. Schulte (1994), 71 Ohio St.3d 41, 45, holding that "R.C.3105.171 applies prospectively only to those divorce cases filed afterits effective date, January 1, 1991." (Emphasis added.) We are mindful that the divorce case before us was filed after January 1, 1991.[2]
We also are not aware of any judicial or legislative support for the notion that there is a "vesting" exception to the Ohio Supreme Court's "divorce cases filed" after the "January 1, 1991" ruling in Schulte that exempts property rights that "vested" before that date. Indeed, any such exception would effectively render the Ohio Supreme Court's ruling inSchulte a nullity in pre-1991 marriages since every spouse named prior to January 1, 1991, would merely assert a pre-January 1, 1991 "vested property right," to avoid R.C. 3105.171. The Supreme Court of Ohio has not adjudicated any such vesting exception and we are aware of no legal authority that allows this court to do so. Furthermore, the creation of "vesting" exceptions to Ohio legislative divorce laws by the courts would open a pandora's box in divorce actions. By law, divorce courts make equitable distributions or re-distributions of property rights without regard to "vesting" claims. The interjection of a "vesting" concept into divorce cases would create a nightmarish patchwork of legislative enactments that would have to be applied in different ways depending not on the effective date of statutes or the Ohio Supreme Court's determinations, but rather solely on the so-called "vesting" date. This would allow individuals to alter legislative effective dates by private conduct. We are not aware of any legal authority that makes legislative enactments and the public policy embodied in those statutes subservient to private contracts or private conduct.
Since contracts, gifts, and constitutional retroactivity issues are not before this court, we will focus on the issue at hand: Did the trial court err by failing to recognize the traceability of any of appellant's separate property in this case? The answer to this question is not dependent on appellant's or appellee's testimony, the competency or credibility of the evidence, or any disagreement with any of the trial court's factual findings. Rather, the erroneous nature of a portion of the trial court's ruling is self-evident from the trial court's findings.
In paragraphs 27 and 28 of the trial court's findings, the trial court makes two separate determinations that appellant used money from "his trust funds" towards the purchase of property held by the parties during the marriage. The record contains other unrebutted evidence that funds used for the purchase of certain acreage in Chardon came through appellant from his family and his trust funds. The trial court's findings and rulings fail to trace these funds adequately. The trial court's ruling that all of the real property involved was marital ignores the traceability of those funds. Under current Ohio law, such tracing is required.
In addressing traceability in this case, the initial focus is whether appellant's act of placing separate property into a joint account and subsequently using the funds to purchase property titled in both parties' names resulted in the separate monies being untraceable. The trial court determined that the money was not traceable and, therefore, became marital property.
In divorce proceedings, a trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the trial court generally must disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (C). An increase in the value of separate property caused by the contribution of either spouse, whether by monetary, labor, or in-kind means, is deemed to be marital property.Middendorf v. Middendorf (1998), 82 Ohio St.3d 397. Appreciation, resulting from an increase in the fair market value of property, is considered passive income and remains the separate property of the spouse. Munroe v. Munroe (1997), 119 Ohio App.3d 530, 536.
An appellate court applies a manifest weight of the evidence standard of review to a trial court's designation of property as either marital or separate. Barkley, supra, 119 Ohio App.3d at 159. Therefore, the judgment of the trial court will not be disturbed upon appeal if supported by competent, credible evidence. Fletcher v. Fletcher (1994),68 Ohio St.3d 464, 468.
Spouses can change the nature of the property through their conduct during the marriage. Moore v. Moore (1992), 83 Ohio App.3d 75, 77. However, the commingling of separate property with marital property will not destroy the identity of the separate property if that property remains traceable. R.C. 3105.171(A)(6)(b); Peck, supra. "[T]raceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property."Id. at 734. As stated previously, the party seeking to have a certain asset characterized as separate property bears the burden of proof by a preponderance of the evidence standard. Boyles v. Boyles (Oct. 5, 2001), Portage App. No. 2000-P-0072, unreported, 2001 Ohio App. LEXIS 4520;Matic v. Matic (July 27, 2001), Geauga App. No. 2000-G-2266, unreported, 2001 Ohio App. LEXIS 3360; O'Brikis v. O'Brikis (Oct. 6, 2000), Portage App. No. 99-P-0045, unreported, 2000 Ohio App. LEXIS 4663; Polakoff v.Polakoff (Aug. 4, 2000), Trumbull App. No. 98-T-0163, unreported, 2000 Ohio App. LEXIS 3542; Letson v. Letson (Sept. 30, 1997), Trumbull App. No. 95-T-5356, unreported, 1997 Ohio App. LEXIS 4445. Although this court is sensitive to the intent of the parties, the present law in Ohio focuses instead upon traceability.
The first issue raised by appellant with regard to the classification of property is the acreage purchased in Chardon in 1981. The following analysis will focus on the forty (40) acre parcel of land that remains vacant. The parties built a home on the remaining ten (10) acres. Appellant testified he funded the purchase from monies received from the sale of land in Florida by his family. Appellant received over one hundred fifty thousand dollars ($150,000) following the sale of the Florida property. He combined that money with an interest payment from one of his trusts to buy the Chardon land. Appellee admitted that the funding for the Chardon land purchase came from appellant's separate property, but felt the land was joint property because the tax liability incurred from that sale was paid from marital funds. Appellee also points out that title to the land was joint and survivorship. Further, the monies were all placed in the parties' joint account before the property was purchased.
Determining whether property involved in a divorce proceedings is marital or separate is often difficult, especially when the property is commingled or the object of a gift.
A trial court is to assume that any property acquired during the marriage is marital, unless evidence is offered to rebut the presumption. Barkley, supra, 119 Ohio App.3d at 160. A spouse's pre-marital property remains separate property as long as it is traceable, regardless of whether it has been commingled with other property. Id.
Appellant asserts that the Chardon property is his separate property because he funded the purchase with monies received from his family's sale of land in Florida. The trial court ruled that the Chardon parcel was marital property because title was held by the parties joint and survivorship and because appellant "treated" it as marital property and acknowledged that the proceeds were deposited in a joint account. Absent from the trial court's ruling is any discussion or finding concerning traceability or gift. The trial court's apparent reliance on the deed and subsequent joint account raises a serious question as to the basis of the court's ruling with respect to the Chardon property. However, the holding of title to real property by both spouses is not determinative of whether the property is marital or separate. R.C. 3105.171(H). Separate funds placed in a joint checking account and used to purchase property held in joint title is insufficient to demonstrate a gift, absent evidence of donative intent. Angles v. Angles (Sept. 15, 2000), Fairfield App. No. 00CA1, unreported, 2000 Ohio App. Lexis 4281. Commingling does not destroy the separate nature of the property if the property remains traceable. Frederick v. Frederick (Mar. 31, 2000), Portage App. No. 98-P-0071, unreported, 2000 Ohio App. Lexis 1458. Therefore, to the extent the trial court's decision that the Chardon property was marital is predicated on the deed form and joint account, it is incorrect as a matter of law. This, however, does not resolve the status of the Chardon property. The primary focus when determining whether separate property has become marital is traceability.
Appellant testified he titled the property in appellee's name with the understanding that she would have title upon his death. Appellee claimed that the property was to benefit both parties as she also would be paying taxes on the land.
The trial court made no specific finding (i) that appellant "gifted" an interest in the Chardon property to appellee, (ii) with respect to the tracing of appellant's separate property, or (iii) concerning transmutation of his separate property.
When allocating property between the parties, a trial court must make written findings of fact that support a property determination with sufficient detail to enable a reviewing court to determine that the decision is fair, equitable and in accordance with the law. R.C.3105.171(G); Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus.
In the instant matter, the trial court's ruling fails to address the issues of traceability or gift. Rather, the lower court concentrated on the form of the deed and the use of a joint account. As a result, we determine that appellant's assignment of error as to the forty (40) acres of the Chardon property has merit. On remand, the trial court is instructed to issue specific written findings of fact with respect to the tracing of appellant's separate property; whether a gift, if any, was involved; and determining whether the Chardon parcel was separate or marital property.
Appellant next asserts that the trial court erred by not determining what portion of the parties' first marital home in Wickliffe was his separate property and what was marital. The Wickliffe home was purchased in 1982 and titled in both parties' names. A down payment of thirty-five thousand dollars ($35,000) was made for the residence with the remaining thirty thousand dollars ($30,000) being financed through a mortgage. Appellee acknowledged that at least some of the down payment was funded with a disbursement from appellant's trust. Appellant testified the entire down payment of thirty-five thousand dollars came directly from his trust fund. Appellant provided a statement at trial showing a disbursement from his trust fund for thirty-one thousand dollars ($31,000). Appellant averred two other cash disbursements were made on April 14, 1982. The Wickliffe residence was purchased a few days later.
Appellant presented ample evidence demonstrating he provided the down payment for the Wickliffe marital residence from his separate property. Appellant still was required to trace that separate property. Appellant testified the proceeds from the sale of the Wickliffe home were applied to the bridge loan used for the construction of the Chardon residence. Appellant stated only a small amount was left over. He did not testify as to exactly how much of the proceeds was not used for the Chardon home or what happened to that money. Any money not used for the Chardon residence will be deemed to be marital as appellant provided no evidence tracing the amount or its use. Also, the burden was appellant's to demonstrate that his separate property remained traceable once it was used for the Chardon residence. The traceability of appellant's separate property with regard to the Chardon residence will be discussed below.
Appellant claims the trial court erred by not determining how much of the marital home constructed on the Chardon property remained his separate property. The parties stipulated that the value of the home and land was six hundred twenty-five thousand dollars ($625,000) at the time of separation.
The construction of the residence was financed by a series of loans and mortgages. The parties used a bridge loan of fifty thousand dollars ($50,000) with the Wickliffe home as collateral. Following the sale of the Wickliffe home, the proceeds were applied to the costs of the Chardon home. Appellant testified to other loans for three hundred fifty thousand dollars ($350,000). The remainder of the money spent to build the home came from disbursements from appellant's various trusts. Appellant testified to several disbursements being made from his account, which were used to finance construction costs. Trust statements as well as banking records reflect that several trust disbursements were made shortly before appellant paid a contractor involved in building the home.
The parties agree that far more funds were expended in constructing the Chardon home than are reflected in its appraised value. In essence, the home was vastly overbuilt. The appraised value of the home itself was stipulated as being five hundred thousand dollars ($500,000), with the ten (10) acres of land being appraised at one hundred twenty-five thousand dollars ($125,000). Appellant testified to spending anywhere from seven hundred twenty-five thousand dollars ($725,000) to eight hundred thousand dollars ($800,000) to build the home. Given the disparity in the construction costs and the appraised value of the home, it is impossible to distinguish which part of the appraised value of the home is attributable to appellant's separate property and what is the marital property. Appellant's trust funds as well as the proceeds from the Wickliffe home are not traceable and became marital property. The trial court was correct in determining that appellant's separate property in the Chardon residence and the ten (10) acre parcel was not traceable.
Appellant next disputes the trial court's finding that real estate located on Vine Street in Eastlake was marital property. This is the land where appellant's veterinary practice was located. Appellant also argues that the practice itself remains his separate property. Appellant testified he purchased both the land and the practice for one hundred thousand dollars ($100,000). Appellant used twenty-four thousand dollars ($24,000) from his trust funds for the down payment. Appellee does not dispute this amount or the source. Another trust disbursement of twenty-five thousand dollars ($25,000) was used for improvements to the business. The loan for the remainder of the purchase price was retired in two years using earnings from the business.
Again, aside from title, there is no evidence the down payment money was not traceable. The trial court erred by determining the entire Vine Street property and the veterinary practice was marital because the down payment remained traceable. Even so, there is no evidence that the appreciation on the property was passive in nature. Given that appellant testified he made improvements, it is unlikely the appreciation was solely passive, if at all. Appellant bore the burden of demonstrating the appreciation was passive. Bugos v. Bugos (Oct. 15, 1999), Trumbull App. No. 98-T-0141, unreported, 1999 Ohio App. LEXIS 4875. Appellant provided no evidence to show the appreciation was passive. Only the money used for the down payment remained appellant's separate property. The appreciation of the real estate and practice was marital property.
The trial court was correct in determining appellant provided no evidence as to how the twenty-five thousand dollars ($25,000) used for improvements added to the value of the asset. Appellant did not testify as to what improvements were made or how the improvements increased the property's value. The trial court did not err by failing to award this amount to appellant as his separate property in the Eastlake property.
Appellant's assignment of error has merit in part and is overruled in part. The twenty-four thousand dollars ($24,000) used by appellant for the down payment for the Eastlake property is his separate property. This matter is affirmed in part, reversed and remanded in part to the trial court for further proceedings with respect to the Chardon property consistent with this opinion.
FORD, P.J., concurs, CHRISTLEY, J., dissents with Dissenting Opinion.
[1] We note that clear and convincing evidence of any alleged gift of a real property interest from appellant to appellee is lacking in the record.
[2] The underlying divorce case was filed on January 20, 1998.