[Cite as *State v. Graham*, 2019-Ohio-1485.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. WD-18-021 |
| Appellee | Trial Court No. 2017CR0213 |
| v. | |
| Andrew Graham | **DECISION AND JUDGMENT** |
| Appellant | Decided:  April 19, 2019 |

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This is an appeal from the judgment of the Wood County Court of Common
Pleas, revoking appellant's, Andrew Graham, community control, and ordering him to
serve 17 months in prison.  Because the trial court erred when it sua sponte declared R.C.
2929.15(B)(1)(c)(ii) unconstitutional, we reverse.

## A. Facts and Procedural Background

{¶ 2} On May 4, 2017, appellant was indicted on one count of failure to provide notice of change of address in violation of R.C. 2950.05(F)(1) and 2950.99(A)(1)(a)(iii), a felony of the fourth degree. Appellant initially pled not guilty, but later entered a guilty plea to the aforementioned offense after reaching an agreement with the state. Pursuant to the agreement, the state recommended a community control sentence. On October 24, 2017, the trial court ordered appellant to serve three years on community control, and informed appellant that he may be subject to a prison term of up to 18 months if he violated the terms of his community control.

{¶ 3} On January 29, 2018, a warrant was issued for appellant's arrest. According to the order of arrest, appellant violated the conditions of his probation. Two days later, on January 31, 2018, the state filed a petition for revocation of community control. According to an exhibit attached to the petition, appellant

> was instructed, by telephone, to report to the Wood County Adult Probation Department on December 19, 2017, at 3:00 p.m. The defendant failed to report as directed for his scheduled office appointment. After the defendant failed to report for 6 additional office appointments, [he] was allotted a final opportunity to report on January 26, 2018, at 3:00 p.m. The defendant failed to report as directed for his scheduled appointment.

2.

**{¶ 4}** On February 6, 2017, the day the arrest warrant was served, appellant appeared before the trial court for a bond hearing. Appellant was released on bond and ordered to appear for a community control violation hearing on February 13, 2018.

**{¶ 5}** At the February 13, 2018 community control violation hearing, appellant, through counsel, stipulated to the violations outlined in the state's petition and waived a formal hearing. During the hearing, appellant's counsel explained that appellant failed to report to his scheduled appointments because he had no means of transportation to the probation department. Appellant's counsel emphasized that appellant called into the probation department on each occasion to inform his probation officer that he would not be able to make his appointment. Further, counsel highlighted the fact that appellant turned himself in as soon as the underlying arrest warrant was issued.

**{¶ 6}** Regarding the sentence available to the trial court, appellant's counsel argued that appellant's violations were technical in nature and were therefore subject to a maximum sentence of 180 days pursuant to R.C. 2929.15(B)(1)(c)(ii). For its part, the state recommended a prison sentence of 180 days. When the trial court asked the state to clarify why it was only recommending 180 days, appellant's counsel interjected and explained:

Judge, under the new law, unless there is a new crime committed, the Court is limited on felony fours to a 180 day sentence. As the law is written, unless a new felony is charged or a new misdemeanor is charged, it is, by definition, it is what is called a technical violation.

3.

On the facts of this case, and what's set in the corroboration, they are clearly technical violations. In any event, whether that was a wise choice by the legislature is certainly open to debate, but that's what they did.

{¶ 7} The state then indicated that the technical-nontechnical distinction contained in R.C. 2929.15(B)(1)(c)(ii) provided the basis for its recommendation of a 180-day sentence, implicitly conceding that the violation was technical in nature. Ultimately the state explained that it was "only able to recommend the 180 days."

{¶ 8} In response to the parties' agreement as to the application of R.C. 2929.15(B)(1)(c)(ii), the court stated:

The Court does not believe that the law is constitutional because it violates the separation of powers. This Court indicated at the time of sentencing that I was reserving an 18-month prison sentence and I'm not going to make a liar out of myself. At some point in time, the courts have to draw the line and say, you know, we have certain obligations, certain things that we have to do, and an intrusion by another agency into the judicial branch of government is unconstitutional.

At this time, based upon the defendant's stipulation to the violation, I am going to impose a 17 month prison sentence * * *. I've outlined all of the reasons for that, based upon his complete and utter failure to comply with any of the community control sanctions. I believe that a sex offender who has failed to report his address and has been given every opportunity,

that this is a reasonable sentence. It's not waste of resources given all of the facts in this case.

{¶ 9} Following the court's imposition of the 17-month sentence, appellant's counsel moved the court for a stay of execution pending appeal, which the trial court denied. Thereafter, appellant filed a timely notice of appeal.

## B. Assignment of Error

{¶ 10} On appeal, appellant presents one assignment of error for our review:

The trial court committed plain error in sentencing Appellant to prison in excess of one hundred eighty days on a fourth degree felony for a technical violation of his community control, in violation of R.C. 2929.15(B)(1)(c)(ii).

## II. Analysis

{¶ 11} In his sole assignment of error, appellant argues that the trial court erred under R.C. 2929.15(B)(1)(c)(ii) when it sentenced him to a prison term in excess of 180 days.

{¶ 12} Under R.C. 2929.15(B)(1)(c)(ii),

If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense or for any violation of law committed while under a community control sanction imposed for such a felony that consists of a

new criminal offense and that is not a felony, the prison term shall not exceed one hundred eighty days.

{¶ 13} Here, the parties agreed below that R.C. 2929.15(B)(1)(c)(ii) applies. On appeal, appellant argues that his failure to report to his probation officer constituted a technical violation of the conditions of his community control sanction and, thus, he should not have been sentenced to any more than 180 days in prison for said violation. According to appellant, "anything other than a new conviction would be a technical violation."

{¶ 14} In its brief to this court, the state acknowledges that appellant's violation "was a 'technical' violation, as R.C. 2929.15(B)(1)(c) has been interpreted." The state goes on to indicate that it "will not advance a counter-argument in this brief."

{¶ 15} Notably, appellant's brief to this court was filed on July 11, 2018, and the state's brief was filed on October 2, 2018. Thereafter, on January 25, 2019, we issued our decision in *State v. Calhoun*, 6th Dist. Wood No. WD-17-067, 2019-Ohio-228, ¶ 29, in which we rejected appellant's interpretation of "technical violation" and stated that the determination of whether a violation is technical in nature depends upon whether the condition violated was "a specifically tailored substantive rehabilitative requirement or merely a general administrative requirement to facilitate supervision during the period of the sanction." We went on to state that the term "technical" is distinct from the term "noncriminal." *Id.* at ¶ 30, citing *State v. Mannah*, 5th Dist. Fairfield No. 17-CA-54, 2018-Ohio-4219, ¶ 14.

6.

**{¶ 16}** Similarly, on January 17, 2019, the Eighth District released its decision in *State v. Neville*, 8th Dist. Cuyahoga No. 106885, 2019-Ohio-151, which also addressed the meaning of "technical violation," and found that "the legislature did not intend to limit the meaning of 'technical violation' only to conduct that is not criminal in nature. Rather, it is our view that the General Assembly intended to allow the judge to retain some discretion when faced with more serious violations that do not rise to the level of a crime." *Id.* at ¶ 49. As a result of its interpretation of "technical violation," the Eighth District held that Neville's complete failure to report to probation for a period of three months was not a technical violation. *Id.* at ¶ 48. The court explained its reasoning as follows:

> The outcome of this case would have likely been different had Neville failed to report for one meeting with her probation officer after she had previously reported. Failing to report one time after previously reporting may be a technical violation—depending on all of the other factors of that individual case. But here, Neville failed to report at all for over three months, and thus, failed to comply with any of the conditions imposed for her community control sanctions. *Id.*

**{¶ 17}** In light of our decision in *Calhoun*, and guided by the decision in *Neville*, we find no merit in appellant's assertion that his community control violation is technical merely because a failure to report does not constitute a new criminal offense. However, our analysis does not end there.

7.

{¶ 18} Notably, the trial court in this case imposed a prison sentence greater than 180 days, not because it found that appellant's violation was nontechnical and therefore outside the scope of R.C. 2929.15(B)(1)(c)(ii), but because it found R.C. 2929.15(B)(1)(c)(ii) to be unconstitutional.

{¶ 19} Generally, courts do not address constitutional issues unless it is absolutely necessary to do so. *City of Cleveland v. Williams*, 8th Dist. Cuyahoga No. 106454, 2018-Ohio-2937, ¶ 12. This principle, known as the constitutional avoidance doctrine, is well-established in Ohio law. In *State ex rel. Herbert v. Ferguson*, 142 Ohio St. 496, 52 N.E.2d 980 (1944), the Supreme Court of Ohio stated that "[c]onstitutional questions will not be decided until the necessity for a decision arises on the record before the court." *Id.* at paragraph two of the syllabus; *see also Ohioans for Fair Representation, Inc. v. Taft*, 67 Ohio St.3d 180, 183, 616 N.E.2d 905 (1993), quoting *Hall China Co. v. Pub. Utils. Comm.*, 50 Ohio St.2d 206, 210, 364 N.E.2d 852 (1977) ("'Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary.'").

{¶ 20} "'Although the doctrine of constitutional avoidance tends to apply most often in the context of appeals, the doctrine applies equally to the trial courts.'" *Williams* at ¶ 13, quoting *Fulton v. Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 104561, 2017-Ohio-971, ¶ 10.

{¶ 21} Here, the trial court erred in reaching the constitutional question because the issue was never raised by the parties. In *Ohio Pub. Emps. Retirement Sys. v. Coursen*,

8.

156 Ohio App.3d 403, 2004-Ohio-1229, 806 N.E.2d 197 (9th Dist.), the Ninth District reversed a trial court's judgment in a case involving payment of survivor benefits, where the trial court, sua sponte, declared portions of R.C. Chapter 145 unconstitutional. In its decision, the Ninth District found that there was no reason for the trial court "to delve into the issue of the constitutionality of various sections of R.C. Chapter [145]," because the constitutional issue had not been raised by either party. *Id.* at ¶ 6. Similarly, in *Williams*, *supra*, 8th Dist. Cuyahoga No. 106454, 2018-Ohio-2937, the Eighth District reversed the decision of a trial court, where the court raised a Fourth Amendment issue sua sponte. There, the court took issue with the fact that the trial court "essentially stepped into the shoes of Williams and/or defense counsel and raised the Fourth Amendment issue on Williams's behalf." *Id.* at ¶ 24.

{¶ 22} As in *Coursen* and *Williams*, the trial court in this case held, sua sponte, that R.C. 2929.15(B)(1)(c)(ii) violated separation of powers principles and was therefore unconstitutional. In so doing, the trial court essentially "stepped into the shoes" of the state and raised the constitutionality of the statute for the state. Neither party argued that R.C. 2929.15(B)(1)(c)(ii) violated separation of powers. Rather, appellant argued, and the state agreed, that R.C. 2929.15(B)(1)(c)(ii) was applicable in this case, and the state structured its sentence recommendation accordingly. When the parties in an action do not raise constitutional concerns, it is inappropriate for the court to address such issues sua sponte, as it is unnecessary to do so in order to resolve the matter. *First Merchants Bank v. Gower*, 2d Dist. Darke No. 2011-CA-11, 2012-Ohio-833, ¶ 18.

9.

**{¶ 23}** Because the separation of powers issue was not raised by the parties, the trial court should not have passed upon the issue sua sponte. In so doing, the trial court arguably became an advocate for the state. *See In re Estate of Nibert*, 12th Dist. Madison No. CA86-05-012, 1987 Ohio App. LEXIS 6570, *6 (Apr. 27, 1987) (rejecting an argument that the trial court should have sua sponte ordered a party to produce documents or hold the party in contempt based upon the concern that "serious questions would exist as to whether [the trial court] had abandoned its neutral posture in the litigation and become an advocate."). "It is the court's role to act as an arbiter, not an advocate." *State ex rel. Twitchell v. Saferin*, Slip Opinion No. 2018-1238, 2018-Ohio-3829, ¶ 16 (plurality opinion).

**{¶ 24}** In essence, the trial court's decision striking R.C. 2929.15(B)(1)(c)(ii) as unconstitutional amounted to a declaratory judgment. "Under Ohio law, three elements are necessary to obtain a declaratory judgment as an alternative to other remedies: (1) that a real controversy between adverse parties exists; (2) which is justiciable in character; and (3) that speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost." *Quality Care Transport v. Ohio Dept. of Job & Family Servs.*, 2d Dist. Clark Nos. 2009 CA 113, 2009 CA 121, 2010-Ohio-4763, ¶ 16, citing *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 586 N.E.2d 80 (1992).

**{¶ 25}** In *Gower*, *supra*, 2d Dist. Darke No. 2011-CA-11, 2012-Ohio-833, a foreclosure case, the Second District similarly concluded that the trial court erred in declaring a statute unconstitutional where the parties did not challenge the

10.

constitutionality of the statute. There, the court characterized the trial court's decision as a declaratory judgment, and reasoned that such a judgment was improper absent the parties requesting declaratory relief.

{¶ 26} As noted above, there was no controversy between the parties in this case regarding the constitutionality of R.C. 2929.15(B)(1)(c)(ii). For this reason, we find that the trial court erred in sua sponte declaring R.C. 2929.15(B)(1)(c)(ii) unconstitutional and ignoring it at sentencing. Accordingly, we find appellant's sole assignment of error well-taken.

### III. Limitations on Remand

{¶ 27} Our determination that the trial court erred in sua sponte addressing the constitutionality of R.C. 2929.15(B)(1)(c)(ii) requires us to remand this matter to the trial court. On remand, the trial court is directed to make a R.C. 2929.15(B)(1)(c)(ii) determination. Because the state did not raise the constitutionality of R.C. 2929.15(B)(1)(c)(ii) before the trial court at the violation hearing, that issue has been waived and may not be raised on remand. *See Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724 N.E.2d 787 (2000) (concluding that party waived constitutional arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings). Thus, the trial court's role in making its R.C. 2929.15(B)(1)(c)(ii) determination is to determine whether appellant's conduct amounted to a technical

11.

violation or nontechnical violation under R.C. 2929.15(B)(1)(c)(ii).[1]  The trial court has not yet made this determination, which it must do prior to imposing a sanction for appellant's violation of his community control.

## IV.  Conclusion

**{¶ 28}** In light of the foregoing, the judgment of the Wood County Court of Common Pleas is hereby reversed.  This matter is remanded to the trial court for a new violation hearing at which the trial court shall consider whether appellant's violation was technical or nontechnical under R.C. 2929.15(B)(1)(c)(ii).  The state is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

---

[1] Although the parties agreed below that the violation was technical, the trial court, in exercising its duty to determine whether the violation fit the definition of a "technical violation," is not bound by the parties' agreement.  *State v. Osley*, 6th Dist. Lucas No. L-17-1025, 2018-Ohio-437, ¶ 30 (finding that the trial court was not required to draw a new venire simply because the state agreed that the jury had been tainted); *State v. O'Neal*, 5th Dist. Fairfield Nos. 16-CA-35, 16-CA-37, 2017-Ohio-8755, ¶ 18 (finding that state's concession that appellant's petition should be considered timely-filed was not binding on the trial court).

Mark L. Pietrykowski, J.                    _____
                                                                JUDGE

Christine E. Mayle, P.J.

                                            _____
Gene A. Zmuda, J.                                               JUDGE
CONCUR.

                                            _____
                                                                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.