OPINION
Glen Carlisle entered pleas of guilty to a three count bill of information which charged him with voluntary manslaughter, a first degree felony; illegal possession of a firearm in a liquor permit premises, a fifth degree felony which carried a one year firearm specification; and carrying a concealed weapon, a fourth degree felony.
Carlisle had originally been indicted on counts of murder pursuant to R.C. 2903.02(B), which carried a three year firearm specification, illegal possession of a firearm in a liquor permit premises, which carried a one year firearm specification, and carrying a concealed weapon.
The trial court initially imposed concurrent sentences of nine years on the manslaughter count, one year on the illegal possession of a firearm in a liquor permit premises count, and nine months on the carrying concealed weapon count.
To correct a mistake in sentencing, but to preserve the trial court's intent that Carlisle be sentenced to nine years imprisonment, Carlisle was resentenced to concurrent terms of eight years for voluntary manslaughter, nine months for illegal possession of a firearm in a liquor permit premises, and nine months for carrying a concealed weapon, to be served consecutively to the one year mandatory sentence on the firearm specification.
Carlisle advances four assignments of error. He concedes that his third assignment has been rendered moot by the resentencing, which occurred after he filed his appellate brief. That assignment is overruled.
Because Carlisle's first two assignments involve the same contention — that the sentences are contrary to law because they exceed the minimum sentence prescribed for each offense — we will discuss them together.
 "1. THE SENTENCES IMPOSED UPON APPELLANT FOR THE SUBSTANTIVE OFFENSES HEREIN ARE CONTRARY TO LAW, BECAUSE THEY ARE GREATER-THAN-MINIMUM AND SHOULD TOTAL THREE YEARS.
 "2. THE NEAR-MAXIMUM SENTENCE IMPOSED UPON APPELLANT FOR THE OFFENSE OF VOLUNTARY MANSLAUGHTER IS CONTRARY TO LAW, BECAUSE IT IS TOO HARSH AND NOT SUPPORTED BY THE FACTS AT BAR."
The charges against Carlisle arose out of the shooting death of Erie Colter February 24, 2001, at Spanky's Doll House, a night spot in Harrison Township in Montgomery County. In making its sentencing decision, the trial court had the benefit of a videotape depicting the melee that culminated in the shooting and the presentence investigation report. We have reviewed both.
Briefly, Carlisle, who was thirty-four years old, was one of twelve white motorcycle gang members who got into a fight with four black men at Spanky's. Carlisle shot Colter after Colter threw a chair at him. Colter was also beaten with a beer bottle by Allen Lawson, beaten with a wooden club by an unidentified person, and shot again by a different gunman. Prior to this incident, Carlisle's adult criminal record appears to have been limited to two DUI convictions in the early nineties, for which he was sentenced to three days in jail on the earlier conviction and thirty days in jail on the later conviction.
R.C. 2929.14(B) provides that where an offender has not previously served a prison term, and the trial court elects or is required to impose a prison term, the trial court shall impose the shortest authorized prison term unless the trial court finds on the record that the shortest prison term (1) will demean the seriousness of the offender's conduct or
(2) will not protect the public from future crime by the offender orothers. Only one of the two findings is necessary for the trial court's exceeding the minimum sentence.
The trial court made both of these findings. Carlisle's essential argument on appeal is not that the trial court failed to make the required findings but, rather, that the record does not support those findings.
In imposing the nine year sentence — later modified to eight years — for voluntary manslaughter, the trial court stated:
 "The Court in determining this matter is left with two things. Mr. Carlisle, up to this time from the record that I see, you have led a pretty exemplary life. Run around with some of the wrong people and for reasons that I'll never understand, you never got yourself in any trouble before this, but when you did, you went first cabin. You decided to be in a situation carrying an instrument which could inflict death and which it ultimately did. You're not the only one involved in that particular melee, but you were at a place and generally when people go to places like that, trouble will follow them. It doesn't take much effort to get involved in it. I have also at the request of your counsel and the State of Ohio reviewed the films of this particular shooting, and I understand the opportunities that presented themselves for both sides to cease and desist the situation, and neither side chose to do so, but none of the actions carried out by the decedent were in any way threatening sufficient for you to take the type of action that you did.
"* * *
 "This goes beyond the normal minimum sentence for the first time, it goes to the fact that this was a very serious crime, and to do less would demean the nature and seriousness of this offense. There is a man that is dead as a result of a very improvident set of actions that set forth and carried out and continued by you. Further, anything less would not protect the public adequately. We have enough trouble in bars and restaurants with people shooting each other and doing things like that, and accordingly, that is the reason I have done this. Also my view of the situation. It appeared to me that this thing never should have raised to this level. It was largely because of people not shutting their mouths, but I never saw anybody killed by a phrase from Shakespeare or any other type of situation."
In imposing the one year and nine month sentences on the weapons violations, the trial court further stated:
 "Reasons for the sentence being above the minimums is the fact that the matters were serious. To do less would demean the seriousness of what it is. Could have gotten a lot worse. Could have gotten lot, lot worse. You have an opportunity during that time, and it's going to be a long time before you come out to the public just to figure out which way your life is going to be and how you're going to react from here on. I understand it's something you would certainly like to live over. So would the victim."
Carlisle first points to the seriousness and recidivism factors identified at R.C. 2929.12(B-E). He claims that one "more serious" factor applies to him (victim suffered serious physical harm) and three "less serious" factors apply to him (victim induced or facilitated offense, offender was strongly provoked, substantial grounds for mitigation). Carlisle claims that no "recidivism likely" factors apply to him, and that all "recidivism not likely" factors apply to him.
It is clear that the trial court did not share Carlisle's view that the "less serious" factors he identifies are compelling.
First, the charge of murder was reduced to one of voluntary manslaughter, which is defined as causing the death of another "while under the influence of sudden passion or in a fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the (offender) into using deadly force . . ." R.C. 2903.03. Thus, Carlisle had received the benefit of these "less serious" factors already by operation of the reduction of the murder charge to voluntary manslaughter. Having viewed the videotape of the melee, we perceive no conduct of Colter that would merit any significant weight being accorded these "less serious" factors beyond what was accorded in the reduction of murder to voluntary manslaughter. Indeed, having viewed the videotape of the incident, the trial court may well have concluded that the reduction to voluntary manslaughter had been more than generous, such that imposition of the minimum sentence would have surely demeaned the seriousness of Carlisle's conduct.
Turning to the issue of recidivism, the only statutory recidivism likely factors are Carlisle's two DUI convictions, and what the PSI reports as a lack of genuine remorse (which Carlisle disputes, having claimed at sentencing that he was remorseful). Carlisle's two DUI convictions nullify one of the "recidivism not likely" factors he claims apply, and the trial court may have reasonably questioned the sincerity of his expressed remorse. More important, we think, is the fact that R.C.2929.14(B) authorizes the trial court to consider protecting the public from future crime, not only by the offender, but by "others." It appears to be abundantly clear from the trial court's remarks that it was concerned, and justifiably so, with the potential for violence occasioned by circumstances such as are presented here, and that a stern sentence was necessary to inform those similarly situated that conduct as displayed by Carlisle will not be treated lightly.
It is also worth noting that R.C. 2929.12(A) expressly permits the trial court to consider other relevant factors besides those specifically identified in subsections B through E.
Carlisle next argues that the fact that he did not receive consecutive sentences on the three principal charges, pursuant to R.C. 2929(E)(4), demonstrates that the record doesn't support the trial court's findings made pursuant to R.C. 2929.14(B). We see no "incongruity" in the trial court's determining that a longer than minimum sentence was warranted for this offense of voluntary manslaughter, but not determining that all of the necessary findings required by R.C. 2929.14(E)(4) for the imposition of consecutive sentences could, or should, be made. In our judgment, the record supports the trial court's R.C. 2929.14(B) findings, particularly the finding that a minimum sentence will demean the seriousness of Carlisle's conduct, and the trial court's failure to impose consecutive sentences does not cause us to question that judgment.
We are not persuaded that the trial court was biased against Carlisle because he was a member of the Outlaws Motorcycle Club. Carlisle claims bias based solely on the court's expression of apparent astonishment that Carlisle had stayed out of trouble up until the incident in question despite his membership in the Outlaws.
As for the general contention that the greater than minimum sentences on all three principal charges are "too harsh," suffice it to say that the trial court made the findings required by R.C. 2929.14(B) to exceed minimum sentences. (Although Carlisle understandably has concentrated on the sentence for voluntary manslaughter, he appears to intend that his arguments also apply to the sentences on the weapons charges, and our discussion likewise embraces those two charges). The trial court did not impose maximum sentences and, therefore, did not need to make the findings required by R.C. 2929.14(C). Accordingly, the question is whether, on this record, concurrent sentences of eight years (from a range of four to nine years) for voluntary manslaughter, nine months (from a range of seven to eleven months) for illegal possession of a firearm in a liquor permit premises, and nine months (from a range of seven to seventeen months) for carrying a concealed weapon, i.e., more than the minimum but less than the maximum sentences, constitute an abuse of discretion. We think not.
Because the nine month sentences for the weapons violations are concurrent with the eight year sentence for voluntary manslaughter, the question of whether these sentences are too harsh is subsumed in the question of whether the eight year sentence for voluntary manslaughter is too harsh.
The reduction of the murder charge — which carried a mandatory sentence of fifteen years to life — to one of voluntary manslaughter, and the elimination of the three year gun specification, were — on this record — generous concessions by the State. For reasons already stated, the trial court's R.C. 2929.14(B) findings, particularly that a minimum sentence would demean the seriousness of Carlisle's conduct, find ample support in the record. Absent R.C.2929.14(C) findings, the trial court's sentencing range was four to nine years. We have noted the gradations of seriousness of the same crime.State v. Newton (Dec. 21, 2001) Montgomery App. No. 18934, unreported. Certainly one can conceive of persons who, like Carlisle, are guilty of voluntary manslaughter, but whose conduct is less serious than Carlisle's. That is one of the reasons why the legislature has prescribed a sentencing range.
Here, Carlisle, in violation of Ohio law, took a firearm into a liquor permit premises, got into a melee, and shot an unarmed man who had thrown a chair at him. The defense of self-defense was non-existent, and the evidence of those facts that mitigate what would be murder to manslaughter was, at best, thin. We cannot agree with Carlisle that the sentences were too harsh, and the first two assignments of error are overruled.
 "4. THE PROVISIONS OF O.R.C. SECTION 2929.14(D)(1), AS APPLIED TO APPELLANT, VIOLATE APPELLANT'S RIGHTS TO EQUAL PROTECTION OF LAW UNDER THE FEDERAL AND OHIO STATE CONSTITUTIONS."
Carlisle's contention under this assignment is that his right to the equal protection of the laws has been violated by his being prosecuted for illegal possession of a firearm in a liquor permit premises. R.C.2923.121. He claims that the legislature has acted to deprive him of equal protection by permitting this offense to carry a sentence enhancing specification whereas carrying a concealed weapon — R.C. 2923.12
— and having a weapon under disability — R.C. 2923.13
— are exempted from the specification prerogative by R.C.2929.14(D)(1)(e). Carlisle's argument is that because all three offenses can be committed in a bar, it is a denial of equal protection to permit illegal possession of a firearm in a liquor permit premises to be enhanced by a firearm specification where such enhancement is forbidden for the other two offenses.
The State contends, and we agree, that we need not consider this assignment because the issue was not raised in the trial court although it could have been. State v. Awan (1986), 22 Ohio St.3d 120. (Carlisle's guilty plea to the offense does not, of itself, preclude appellate review of the constitutional issue. State v. Wilson [1979],58 Ohio St.2d 52).
We believe a brief discussion of the merits of Carlisle's contention is appropriate. While it is true that all three offenses can be committed in a liquor permit premises — indeed, Carlisle also pleaded guilty to CCW — only illegal possession of a firearm in a liquor control premises can be committed only in a liquor control premises.
As illustrated by the tragic facts of this case, illegal possession of firearms in establishments where liquor is served creates a particular potential for harm and a particular problem for law enforcement which may well transcend the potential for harm and problem for law enforcement contemplated by R.C. 2923.12 and R.C. 2923.13, and with which the legislature may be properly concerned. The prerogative to enhance a charge of illegal possession of a firearm in a liquor permit premises with a firearm specification is a legitimate expression of that concern.
Carlisle does not assert that he was charged under R.C. 2923.121 on the basis of any impermissible criterion. See State v. McDonald (1987),31 Ohio St.3d 47, 50. Rather, he contends only that the legislature denies him equal protection by allowing a R.C. 2923.121 offense to be enhanced by a specification while forbidding the same treatment for R.C.2929.12 and R.C. 2929.13 offenses. For the reasons stated, we disagree and overrule the fourth assignment of error.
The judgment will be affirmed.
BROGAN, J. and FAIN, J., concur.